MEXICAN ORE CO. *v.* MEXICAN GUADALUPE MINING CO. *et al.*

(*Circuit Court, D. New Jersey.* September 3, 1891.)

1. INJUNCTION—RESTRAINING EXECUTION SALE.
    An injunction will not issue to restrain an execution sale of real estate in a foreign state, and from prosecuting legal proceedings therein against its owner for the collection of a debt alleged to be due defendants, where it appears that judgment in the action has been rendered and sale made thereunder to parties not before the court.

2. JURISDICTION—CONTROVERSIES BETWEEN RESIDENTS OF DIFFERENT STATES.
    Plaintiff, who was a resident of Missouri, brought an action in the United States circuit court of New Jersey for specific performance of defendant corporation's contract to sell certain smelting ores to him, and judgment was rendered as prayed therein, and defendant was enjoined from disposing of the ores to any other persons, and from interfering in any manner with the product of the mines. Defendant disregarded the order, and its officers and directors were adjudged guilty as of a contempt. Afterwards a supplemental bill was filed, alleging that one of the directors, a resident of Pennsylvania, who was not a party to the original bill, although he was one of those adjudged in contempt, had commenced legal proceedings in a foreign state, where the mines were located, to enforce the collection of a debt due him from the corporation, and had procured the appointment of a receiver and an order of sale in satisfaction of the debt, and that such proceedings were instituted to evade the decree for specific performance of the contract previously rendered. *Held* that, the supplemental bill being between different parties, and introducing a new controversy, the court had no jurisdiction thereof under Act

Cong. March 3, 1887, as amended by Act Cong. Aug. 13, 1888, providing that "no person shall be arrested in one district for trial in another in any civil action before the circuit or district court, and no civil suit shall be brought against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded on the fact that the action is between citizens of different states, suit will be brought only in the district of the residence of either the plaintiff or the defendant."

8. INJUNCTION—CONTEMPT.

The director would not be deemed guilty of contempt where it appeared that after service of the injunction on the corporation he resigned his office, and sued it upon a *bona fide* indebtedness due him, and caused a sale of its property in satisfaction of the judgment obtained.

In Equity. Application for injunction.
*Samuel H. Ordway*, for the motion.
*S. Davis Page* and *Samuel Dickson*, contra.

GREEN, J. Upon the 11th day of May, 1889, the complainant filed its bill of complaint in this court against the Mexican Guadalupe Mining Company, the Villaldama Developing Company, the Mexican National Exploring & Mining Company, and the Yguana Smelting & Mining Company, alleging, *inter alia*, that the said defendant companies had made, entered into, and executed a certain contract in writing with the complainant to sell and deliver to it certain smelting ores mined by said contracting companies in Mexico, and necessary for the conduct of the business of the said complainant at its foundries in Kansas City, Mo.; that said defendants refused or neglected to perform such contract, or to keep and abide by its terms and conditions, but utterly failed so to do; that such course of conduct worked irreparable injury to the complainant; and it therefore prayed that the said defendants might be decreed specifically to perform the said contract in all its terms, and, in aid of such performance, that they might be enjoined by a writ of injunction of this court from selling or disposing of any of the smelting ores produced or mined from the mines of the said defendants to any other persons than the complainant during the life of the contract; and, further, that a receiver for the said corporations and their respective properties should be appointed by this court for the better protection of the interests of all concerned. Upon filing this bill an order to show cause why an injunction *pendente lite* should not issue against the defendant was granted. Incorporated in this was a temporary restraining order in the terms of the prayer of the bill. All of the defendants appeared and filed their respective answers to the bill of complaint, and upon the pleadings and accompanying affidavits this court, after thorough consideration, on the 7th day of August, 1889, made an order practically requiring the specific performance of the contract in question, and enjoining the defendants from disposing of their smelting ores to any other person or persons than the complainant, and from intermeddling with the product of their mines in any way or for any purpose, except as might be necessary for the due performance of the said contract; and while the application for a receiver was not at that time granted, yet a manager for said mines was appointed by the court, that through his supervision of said mines the said contract might the more surely be per-

formed. This order, as it appears, was duly served upon the defendants, but was productive of no result; on the contrary, it was expressly charged by the complainant subsequently, and it was made to appear to the satisfaction of the court, that the defendant willfully and purposely refused to obey it, and thereupon proceedings were initiated by the complainant, having for their object the attachment of the officers and directors of the defendant corporations as for a contempt. Upon that question affidavits and answering affidavits were submitted by either side, and after a very full and exhaustive argument of the questions involved this court did adjudge the officers and directors of the said corporations guilty as of a contempt in their failure to obey in good faith the order of this court, and a fine of $1,000 was imposed as punishment for such failure. This order was made April 14, 1890. William M. Clayton was one of the directors of the defendant companies who were so declared guilty of disobedience of the mandate of this court.

On the 17th day of May, 1890, the complainant filed its supplemental bill against the defendants in the original bill and against William M. Clayton, Severo Mallet Prevost, and William C. M. Jones, who were not defendants in the original bill, in which, after reciting the allegations and charges of the original bill, and the action of the court thereupon, and the contempt proceedings, the complainant alleged as new matter that Clayton, by Prevost, his attorney, had commenced, since the order of the 14th of April, 1890, hereinbefore mentioned, in the courts of Mexico, certain legal proceedings to enforce the collection of an alleged indebtedness of the defendant corporations to him, the said Clayton, individually, which indebtedness was said to be about $500,000; and that in said proceedings the said Clayton had procured—*First*, the appointment of Jones as a receiver for the said defendant companies and their property; and, *secondly*, an order of the court directing the said receiver to sell the mines and the property of the said defendant corporations in Mexico, to satisfy the said alleged indebtedness. That the said defendant companies against whom the said proceedings were pending were conniving in such action for the purpose of making it impossible for them to carry out the order of this court specifically to perform their contract with the complainant. And the bill prayed that the said defendants William M. Clayton, Severo Mallet Prevost, and William C. M. Jones, and their attorneys and agents, might be restrained and enjoined from prosecuting or proceeding with or taking any action whatsoever in any action or proceeding, of whatsoever nature, brought, commenced, taken, or had by them, or either of them, in the courts of Mexico, for the purpose or with the object of enforcing the said indebtedness alleged to be due to the said Clayton from the said defendant companies, and from selling or attempting to sell or in any way disposing of any of the mines or property of the defendant companies situate in Mexico or elsewhere, for the purpose of satisfying the said indebtedness alleged to be due to the said Clayton; and that they might be enjoined and restrained from interfering with or obstructing or preventing the carrying out of the order of this court dated July 10, 1889; and for such other and further relief in the premises as the nature of the case

might seem to require. Upon filing the bill a rule to show cause why·
such enjoining order should not be granted was allowed, and made return-
able on the 3d day of July, 1890. For various causes said matter has
been continued, chiefly upon application of the complainant, until the
present hearing of the cause. From the affidavits, record, and statements
submitted on the argument of this rule it appears that the sale of the
property of the defendants was duly made under the process of execution
issued out of the proper court in Mexico at the suit of Mr. Clayton on
the 22d day of May, 1890. The copy of the order to show cause why
the enjoining order should not be made, heretofore referred to, was not
served upon Mr. Clayton until October, 1890. It thus appears that
by the present motion this court is asked to enjoin Clayton and his co-
defendants (who, it must be said parenthetically, have not been served
with any notice of this proceeding) from prosecuting or proceeding with
or taking any action or proceeding whatever in the courts of Mexico for
the purpose of enforcing any alleged indebtedness due to the said Clayton
from the said defendant corporations, and from selling any of the mines
or property in Mexico belonging to them for the purpose of satisfying
such indebtedness, when in point of fact, as appeared on the argument,
the sale of the property of the defendants in Mexico at the suit of Clay-
ton was had and consummated more than a year ago, and title thereunder
passed to third parties not before the court.

Under such circumstances, should a preliminary injunction be granted?
I think not. The purpose of such an injunction is to preserve, until the
final hearing of the cause, matters in *statu quo*. This is its only proper
and legitimate object. The right to demand such an extraordinary ex-
ercise of the power of a court depends always upon the equitable position
of the parties at the time the application is really made. What that
condition was at any preliminary stage of the cause is not to be consid-
ered. The criterion by which the issue of the writ is to be allowed or
refused is to be found in the question: Does the position of the parties,
the *status* of the matters involved at this present moment, justify the ex-'
ercise of the power? Writs of injunction are not to be scattered loosely
by the court for a tentative purpose only, but there must appear an im-
pending injury, which demands instant preventive action to justify their
allowance. Now, in this case, this court is requested to issue a prelim-
inary injunction to prevent a creditor of a corporation from prosecuting
to judgment a claim against such corporation, and from enforcing such
judgment by the sale of the defendants' property situate in Mexico, 15
months after the judgment has been not only obtained, but satisfied by
a sale under the proper judicial process of the courts of Mexico, under
which the defendants' property has been seized and disposed of. Is it
not perfectly clear that the time for such action by this court has long
since elapsed? If the act to be prevented has been done, would not the
order enjoining the doing of such an act be an absurdity,—a mere *brutum
fulmen* of no possible power or effect? The only answer to this question
must be in the affirmative; and it follows, therefore, that the court is
asked to do an empty and utterly profitless act which cannot have any

beneficial effect.   Such course of action, if indulged in by a judicial tribunal, would justly be pronounced neither seemly nor becoming.

But if it were proper, upon the facts disclosed in these proceedings, to grant the prayer of the bill in question at this time, there is still an insuperable objection to such action by the court.   The bill states in express terms that the Mexican Ore Company, the complainant, is a corporation duly organized under the laws of the state of Missouri, 'and a citizen of the state of Missouri, having its place of business and abode at Kansas City, in said state of Missouri; and that it brings its supplemental bill against William M. Clayton, who, it declares, is a citizen of the state of Pennsylvania, doing business and having his abode at Philadelphia, in the state of Pennsylvania.   The act of congress of March 3, 1887, as amended by the act of August 13, 1888, touching the jurisdiction of this court, makes the following provision:

"No person shall be arrested in one district for trial in another in any civil action before the circuit or district court, and no civil suit shall be brought against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

It seems clear upon the mere reading of this act that this court can have no jurisdiction of a suit commenced by a citizen of Missouri against a citizen of Pennsylvania.   The sole ground of jurisdiction in this case is that the suit is between citizens of different states.   The law is imperative that in such case the suit must be brought either in that district in which the plaintiff resides or in that district in which the defendant resides.   That condition is not complied with, admittedly, in this cause.   The complainant, to relieve itself of this embarrassing position, asserts that its supplemental bill, now filed, is ancillary to the original bill heretofore filed in this court by the party complainant, and that it is a well-settled principle that the court will retain jurisdiction of the cause under such circumstances, although the parties that may be brought in by the ancillary bill are citizens of the same district as the complainant.   It is undoubtedly true that where the circuit court of the United States has acquired jurisdiction of the parties and of the subject-matter of a suit, and ancillary proceedings are instituted, the court will retain the jurisdiction, although the parties upon the different sides of the controversy are citizens of the same state; but I think that such principle cannot be invoked in this case, to enable the complainant to maintain this bill.   This supplemental bill introduces new parties, and an entirely new controversy, not at all necessary to be decided in order to have a final decree on the case presented by the original bill.   That bill was to compel the specific performance of a contract.   That contract was for the supplying to the complainant certain ores, after undergoing a process of manipulation and concentration.   To carry out such contract it is apparent that it is not an absolute prerequisite that these very mines should be in the possession of the defendants.   With or without

them, the defendants rest under the obligation of their contract, and may be decreed to perform it literally. But the action of Clayton, so deprecated and condemned by the complainant, affects the mere actual possession of the mines only. It does not deprive the defendants of their ability to perform their contract. What possible connection, then, can the matter set up in the supplemental bill have with the object of the original bill? How can it be held to be necessary to decide whether or not Clayton is a *bona fide* creditor of the defendant corporations, and, as such, has or has not a right to collect his debts due from them by a suit, in order to decree a specific performance of a contract to which individually he was not a party, nor in which was he, as an individual, at all interested, nor which can be affected in any wise by his action? In *Cross* v. *De Valle*, 1 Wall. 14, it was held that a cross-bill filed in that cause on behalf of parties made defendants in the original bill against Cross was an original bill in its nature, in that it introduced an entirely new controversy, not necessary to be decided in order to have a final decree on the case presented by the original bill; and being, therefore, in the nature of an original bill, such cross-bill could not be sustained against Cross, the defendant, he being neither a citizen nor a resident of the jurisdiction in which the bill was filed. This case is very similar to the one before the court. I think that the proper description of this supplemental bill is that it is an original bill, so far as Clayton is concerned.

If, then, this bill, although called an "ancillary bill," is in its nature an original bill, so far as Clayton is concerned it is evident that this court is wholly without jurisdiction, and no order such as is prayed for, nor any other order, could be, by it, made in the cause.

At the same time the motion for an injunction was presented to the court·a motion to attach William M. Clayton for contempt in not obeying the order of July 10, 1889, was presented to the court. So much of the order of July 10, 1889, as applies to Mr. Clayton is to be found in the enjoining clauses of that order, which was directed not only to the companies defendant, but as well to their officers, directors, trustees, agents, employes, workmen, and servants; and it is admitted that at that time and up to April 10, 1890, Mr. Clayton was a director and vice-president of one or all of the defendant corporations. By the tender and by the acceptance of his resignation his connection with such corporations lawfully ceased on that day. It is undoubtedly true that an injunction or an enjoining order against a corporation and its officers, although the officers are not named personally, and are not parties to the record in any way, is binding upon them; but the scope of such an injunction or enjoining order is to restrain the officers from doing the act prohibited in their official capacity as an officer of the corporation, or in their individual capacity, for the benefit or in the interest of the corporation enjoined. If after the service of such an order or such an injunction upon a corporation an officer thereof severs his connection *bona fide* with such corporation, his action thereafter as an individual in the enforcement of his own vested rights, and not in fraud of the order of the court, nor for

the benefit of or in the interest of the corporation of which he was lately a member, would not be in contravention of such order, nor subject him to punishment for contempt.   Assuming that Mr. Clayton was a *bona fide* creditor of the defendant corporations, after he severed his connection with those companies, certainly, he was not prohibited, by the order enjoining the defendant corporations and their officers from meddling with or disposing of the corporate property, from commencing legal proceedings to enforce the collection of his own individual claims.   Possibly it might have been more proper for Mr. Clayton to have applied to this court to be absolved formally from the terms of the enjoining order, but such a technical failure on his part to seek permission of this court to prosecute his suit ought not to be exaggerated into a contempt, or to be punished as such.   For the purposes of this motion it must be taken as proved that Mr. Clayton was a *bona fide* creditor, and that he did prosecute his suit solely in his own individual interest, antagonistically to the defendant corporations; for it appears from the record that all the allegations made to the contrary in the affidavits annexed to the supplemental bill of complaint are made only upon information and belief, and are not based upon the personal knowledge of the various deponents; while, on the other hand, Mr. Clayton, in the affidavit which he has presented to the court, states in emphatic and positive terms that he is such *bona fide* creditor, particularizing how such indebtedness was created, the amount of it, and that the proceedings taken in Mexico were taken under the advice of counsel learned in the law, and for his own individual protection.   Diligence in creditors is not to be condemned or punished in the interests of those who have not succeeded in collecting their claims.   Without discussing the various other points which have been raised by the counsel for the plaintiff, and ably argued, and as ably contested by the counsel for the defendants, it is enough to say that the court is not willing to judge Mr. Clayton guilty of contempt of the order of July 10, 1889, and the motion to attach him is denied.

ACHESON, J., concurs.