In re COLE.

FIRST NAT. BANK OF BIDDEFORD et al. v. COLE.

(Circuit Court of Appeals, First Circuit.   October 24, 1907.   On Rehearing, February 5, 1908.)

No. 686.

1. BANKRUPTCY—ORDERS—REFUSAL TO OBEY—CONTEMPT.
    If a bankrupt willfully disregards an order of the court requiring payment of money to the trustee, he may be proceeded against for contempt under the general powers vested in superior courts of judicature, or under Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545, 546 (U. S. Comp. St. 1901, p. 3420).
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 166.]

2. SAME—REVIEW—MODE.
    Where a proceeding in the District Court against a bankrupt for contempt in refusing to comply with an order of the court requiring her to pay money to the trustee is taken by virtue of the authority conferred on District Courts in bankruptcy by Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545, 546 (U. S. Comp. St. 1901, p. 3420), the proper mode of obtaining a review of the proceeding is by a petition for revision under such act.
    [Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

3. SAME—SCOPE OF REVIEW—OPINIONS OF TRIAL COURT.
    Where such a proceeding for contempt was based on Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545, 546 (U. S. Comp. St. 1901, p. 3420), on a petition for revision the Court of Appeals may revise any question of law as to which it may justly infer from the record, including the opinions of the District Court, that such court reached a conclusion, whether formally expressed or presented or not.

4. SAME—RECORD—CHARACTER OF PROCEEDINGS.
    In proceedings against a bankrupt for contempt in refusing to obey an order for the payment of money to the trustee, the record should show that an issue had been made on the question of contempt, and that the bankrupt adjudged guilty thereof had had an opportunity to be heard thereon.

5. BANKRUPTCY — CONTEMPT—NATURE OF PROCEEDINGS—PLEADING—EVIDENCE.
    Contempt proceedings against a bankrupt are not required to be formal, but may be instituted by a petition sufficient to notify the bankrupt of the charge made against him, which may be established by affidavits.

6. SAME—PETITION.
    A petition in contempt against a bankrupt for refusing to comply with an order directing her to pay money to her trustee was defective, where it was only such as would be required for ordinary supplementary proceedings for the recovery of a debt, and did not allege that her failure was willful or was not caused by mere inability.

7. SAME—ORDERS—CONTEMPT—EVIDENCE.
    In a contempt proceeding against a bankrupt for failure to comply with an order directing her to pay money to her trustee, evidence *held* insufficient to show that she had such control of the money at the time the order was entered as enabled her to comply therewith so as to render her failure to do so willful.

8. SAME—REMEDIES OF TRUSTEE.
    That a bankrupt's trustee was not able to compel her to pay over money in accordance with the order of the court by contempt proceedings for failure to show that the bankrupt had such control of the fund at the time the order was made as to have enabled her to comply therewith did not prevent the trustee from perusing any other remedies given for the

collection of a judgment from an insolvent debtor for the recovery of such fund.

Elbridge R. Anderson (Charles W. Bartlett, on the brief), for petitioner.

Benjamin Cleaves, for respondents.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PER CURIAM. The court has no question as to adhering to its opinion passed down on February 16, 1906, in Annie M. Cole, petitioner, No. 618, that the order then under consideration is valid in so far as it may be regarded as a legal judgment against Mrs. Cole for the amount therein named; but the question before us now is whether that judgment can be enforced only in the ordinary way in which civil judgments rendered by the federal courts are enforced, or whether the further order of the District Court providing for enforcing it by summary proceedings involving imprisonment of the petitioner may also be availed of under the circumstances. Therefore the court desires reargument on the following questions:

First, what portion of the records and proceedings in bankruptcy relating to Annie M. Cole, and what facts, may the District Court, or may this court, properly consider with reference to the subject-matter of the pending petition?

Second, can the order brought in question by the pending petition be regarded as valid, or be enforced, unless it is shown that the petitioner, Mrs. Cole, had at the date of said order funds, or could then have obtained funds, from which the payment of the amount ordered to be paid by her could then have been made or in any way secured?

Third, what are the facts, pro and con, bearing on all the topics involved in the last preceding question?

Ordered that the case be reargued at the January, 1908, session on the questions propounded by the per curiam passed down this day, and that printed briefs in reference thereto be filed on or before December 21, 1907.

## On Rehearing.

PUTNAM, Circuit Judge. This petition relates to the same proceeding as that out of which our opinion arose which we passed down on February 16, 1906 (144 Fed. 392, 75 C. C. A. 330), namely, an order of the District Court of March 4, 1905, that the bankrupt pay certain moneys to her trustee in bankruptcy. As a sequence thereto, the District Court, on November 6, 1906, after suitable intervening proceedings, entered an order that Mrs. Cole stand committed to the marshal of the district, to be incarcerated until she delivered to her trustee in bankruptcy $2,425, or until otherwise discharged. The petition before us was filed under the statutes in bankruptcy to revise this order of committal in matters of law. The order was in pursuance of a petition filed by the trustee in bankruptcy on June 4, 1906, setting out that Mrs. Cole had not paid over the moneys required by the District Court, as we will more fully show. The propositions of the present petitioner which we need to consider are: First, that the

District Court admitted proofs which it should not have admitted; and, second, that there were not proofs to justify the District Court in making the order of committal.

If Mrs. Cole, who had been adjudged a bankrupt by the District Court, has willfully disregarded its order in reference to the payment of money to the trustee, she might be proceeded against under the general powers vested in superior courts of judicature with reference to contempt, or, also, under the second section of the act of July 1, 1898, c. 541, 30 Stat. 545, 546 (U. S. Comp. St. 1901, p. 3420), which authorizes the District Courts in bankruptcy "to enforce obedience by bankrupts, officers and other persons to all lawful orders, by fine or imprisonment or fine and imprisonment." If the proceeding in the District Court was taken by virtue of the specific provision of the statute, it would be the natural presumption that the proper method of reaching us would be that which was in fact availed of, namely, a petition for revision under the same act. If, on the other hand, the proceeding in the District Court had relation to the general powers vested in superior courts of judicature with reference to contempts, the question would at once arise whether the present petitioner, Mrs. Cole, should not have come to us by writ of error. The parties themselves have made no issue as to either of these topics; but, as this application is without precedent in this court, and without authoritative exposition in all respects in the Supreme Court or in other Circuit Courts of Appeals, and as the extent to which the conclusions in the District Court may be reviewed may depend on the nature of the proceeding there, as also on the method taken to obtain a review thereof by this court, it is advisable that we should explain the position further.

When a case comes up on writ of error with reference to a jury-waived trial of a civil case, or to a proceeding for contempt according to the ordinary course of the common law, the then method of raising questions which do not appear on the face of the pleadings would, if applied to this record, very much limit the scope of our examination with regard to the merits. If, on the other hand, the proceeding in this case was that especially authorized by the second section of the act of July 1, 1898, so that a petition to revise would presumably be the ordinary way of reaching us, and if, on any petition to revise like that before us, we are not restricted as we would be on a writ of error, our outlook is much broadened, and we are authorized to search the opinions filed in the District Court, although not a part of the record in the strict sense of the word, for the purpose of ascertaining at large what were in fact the issues which that court considered. While such opinions cannot be referred to for the purpose of eking out findings of fact when those findings are required to be of record, yet they are constantly made use of when, as for example on a writ of error from the Supreme Court to a state tribunal, the appellate tribunal is at liberty to ascertain at large the propositions of the common, or statute, or constitutional law, on which the case proceeded. This is a clear rule, a very late application of which is in Burt v. Smith, 203 U. S 129, 134, 27 Sup. Ct. 37, 51 L. Ed. 121. As the parties have freely discussed the case at large without objection

on either side, we feel safe to adopt the broader view, and it is our present opinion that it is our right so to do. We are supported in this by Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. On the whole, we accept for this case the position that the proceeding in the District Court was by virtue of the statutory provision expressly authorizing it to compel obedience to its orders; that the way for any party dissatisfied with the conclusion of that court to reach us was by a petition for review; that on such petition we can revise any question of law as to which we may justly infer that the District Court reached a conclusion, whether formally expressed or not, and whether or not formally presented; and that, to that end, we may search, not only the record in that court, but also its opinions.

As said in the opinion passed down by us on February 16, 1906, already referred to, the District Court proceeded originally by a consolidated order, directing the bankrupt to turn over to the trustee the money in controversy, and also directing that, in default thereof, she should be committed. There is no doubt that that order was supported by some precedents; but it seemed to us not consonant with the rules intended for the protection of personal liberty, which rules ought to be applied with special strictness where the imprisonment of a citizen is in any extent absolutely at the control of a single judge, as is the fact here. Therefore we followed the practice in this particular shown by Mueller v. Nugent, 184 U. S., at page 5, 22 Sup. Ct. at page 269, 46 L. Ed. 405. The proceedings there were more summary than before us; but the clear essentials were preserved as we directed them to be preserved here, in that the order to turn over the property was entered, notice thereof given to the individual against whom it ran, with an interval of time to comply therewith, and a refusal so to do, before any order was issued as against one in contempt. The fact that we thus, in a certain sense, dissevered the proceedings, gave rise to the contention now made as to what proofs were properly cognizable by the District Court on the precise issue now before us.

In our opinion we said that:

"A proceeding for contempt is of a different character from one resulting in a mere order for the payment of money to a trustee in bankruptcy."

We also added:

"It is claimed that it is criminal in its nature, while an order for the mere payment of money is purely civil; that it would be justified only by the proofs and the amount of proofs requisite on ordinary criminal issues; and that it is in effect an independent proceeding which can be initiated only after an order for payment of money has been disobeyed, and on an order to show cause, or some other new notice, given to the person alleged to be in default."

On the present proceeding, the petitioner, Mrs. Cole, seems to assume that we ruled all that we said was claimed by her. We were so far therefrom that we added that it was sufficient then to say that the record did not show that she had had any day in court on the question of contempt. The sum and substance of all we authoritatively ruled was that the record should show that an issue had been made in some way on the question of contempt, and that the person

adjudged guilty thereof had had an opportunity to be heard in reference thereto.

It now becomes necessary for us to take a definite position with regard to some of the propositions which we then left open, because now it is apparently claimed by the petitioner that the proceeding against her for contempt is not merely criminal in its character, but is governed by the strict rules of ordinary criminal proceedings, even apparently to such an extent that the allegations of the petition that she be incarcerated for disobedience of an order for payment of money must be supported by new proofs covering all the issues made thereby, and by witnesses confronting her in accordance with the sixth amendment to the Constitution. The precise point is that the learned judge of the District Court, in connection with the petition for committal, not only heard witnesses produced before him after the filing thereof, including Mrs. Cole, but also to a certain extent improperly examined the prior proceedings. The details we will come to hereafter. At the outset we may say it is enough for us to show generally on this point that, while the petition that Mrs. Cole should be incarcerated for contempt may well have raised to a certain extent a new issue, as, for example, the specific issue suggested by our previous opinion, whether or not there was in fact an inability to obtain possession of the funds in question, which it appears from the record were actually in the hands of her husband, and while also it seems to be conceded on all sides that, before committing for contempt, the court should be satisfied beyond a reasonable doubt of a willful refusal or a willful act on the part of the person proceeded against, yet neither the sixth amendment to the Constitution, nor any principle shadowed out by it, has strict application to proceedings of the character before us. Eilenbecker v. Plymouth County, 134 U. S. 31, 39, 10 Sup. Ct. 424, 33 L. Ed. 801. In re Debs, 158 U. S. 564, 596, 15 Sup. Ct. 900, 39 L. Ed. 1092.

The general rule as to the effect of the first 10 amendments is distinctly stated in Robertson v. Baldwin, 165 U. S. 275, 281, 17 Sup. Ct. 326, 329, 41 L. Ed. 715, as follows:

"The law is perfectly well settled that the first 10 amendments to the Constitution, commonly known as the Bill of Rights, were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors, and which had, from time immemorial, been subject to certain well-recognized exceptions arising from the necessities of the case. In incorporating these principles into the fundamental law there was no intention of disregarding the exceptions, which continued to be recognized as if they had been formally expressed."

It is settled that the general rule thus stated in Robertson v. Baldwin applies to proceedings of the character before us. By necessity such proceedings are sometimes summary, and therefore informal in their character. Eilenbecker v. Plymouth County, 134 U. S. 31, 38, 10 Sup. Ct. 424, 33 L. Ed. 801. In Savin, Petitioner, 131 U. S. 267, 278, 9 Sup. Ct. 699, 33 L. Ed. 150, it appeared that objections were made because the court which entered the judgment as for contempt did not require service of interrogatories according to the older practice. The

opinion said that the court could have adopted that mode in trying the question of contempt, but it was not bound to do so. It added:

"It could, in its discretion, adopt such mode of determining that question as it deemed proper, provided due regard was had to the essential rules that obtain in the trial of matters of contempt."

The court declared that such proceedings were analogous to proceedings for the removal of an attorney, according to what was done in Randall v. Brigham, 7 Wall. 523, 19 L. Ed. 285   In that case there was neither any formal accusation nor formal citation; but it was plain that the attorney understood the nature of the charge against him, and had been afforded ample opportunity to explain the transaction and vindicate his conduct. The opinion in Randall v. Brigham, where it is quoted in Savin, Petitioner, continued as follows:

"It is not necessary that proceedings against attorneys for malpractice, or any unprofessional conduct, should be founded upon formal allegations against them. Such proceedings are often instituted upon information developed in the progress of a cause; or from what the court learns of the conduct of the attorney from its own observation. Sometimes they are moved by third parties upon affidavit, and sometimes they are taken by the court upon its own motion. All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made, and opportunity afforded him for explanation and defense. The manner in which the proceeding shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation."

Certainly, there is nothing in the nature of the thing which permits proceedings for the removal of an attorney to be more informal than those for punishment for contempt. The reverse is the fact, because the loss of a life's occupation is involved in the loss of the right to practice in courts of law.

There can be no question that, in reference to this topic, we may search the rules on practice in equity with safety. Equity rule 90 refers us to the practice of the High Court of Chancery in England for assistance in that direction, and this rule relates to the time when it was first enacted. Thomson v. Wooster, 114 U. S. 112, 5 Sup. Ct. 788, 29 L. Ed. 105. There is nothing to show that the rules as to evidence in the federal courts on proceedings in equity for punishment for contempt are any more stringent than formerly in England, where an issue of fact when it arose was often tried on affidavits. 3 Daniell's Chancery (1841) 373; 4 Blackstone's Commentaries, 288. That in the United States ex parte affidavits may be thus used is shown by Rapalje on Contempts (1890) § 126. We may also cite the practice as approved by the experienced Judge Hammond in United States v. The Anonymous (C. C.) 21 Fed. 761, 767, decided in 1884, and by the likewise experienced Judge Green, of the District of New Jersey, as shown in Mexican Ore Co. v. Mexican Mining Co. (C. C.) 47 Fed. 351, 353, decided in 1891. Affidavits were also used without disapproval before Mr. Justice Nelson in Whipple v. Hutchinson, 4 Blatchf. 190, 191, Fed. Cas. No. 17,517, and before Circuit Judge Bond and District Judge Giles in Birdsell v. Hagerston Company, 1 Hughes. 59, 63, Fed. Cas. No. 1,436.

The great fullness with which we have explained this proceeding, and the practice in regard thereto, will be found to have been necessary. For example, the petition on which Mrs. Cole was ordered by the District Court to be incarcerated is only such as would be required for ordinary supplemental proceedings for recovering a debt. It shows only that Mrs. Cole had been ordered to pay and had not. It contains no allegation that her failure to pay was willful, nor anything to show that it was not caused by mere inability. Applying strict rules, this, of course, would not be sufficient to put her on the defensive. Nevertheless, the parties have made no issue on this account, they have proceeded to trial on the merits, they appear to have had no misunderstanding as to the fundamental questions involved, and therefore we pass this by.

The petition in bankruptcy against Mrs. Cole was involuntary, and was filed on November 23, 1903. It alleged that she concealed $2,700, being a part of the sum received by her on September 17, 1903, from the sale of her homestead at Saco in this state. It described her as then living in Wakefield in Massachusetts. She was duly adjudicated a bankrupt, and was examined, and thereupon, after a full report of the referee, which report and the statement of facts therein were confirmed by the District Court, the order was entered on March 4, 1905, to which our opinion passed down on February 16, 1906, related, as follows:

"It is therefore ordered that the bankrupt turn over and deliver to the trustee within 15 days the said sum of $2,425; in default of which she stand committed to the marshal of this district, to be incarcerated until she obeys the order of this court, or is otherwise discharged by due process of law, or until the further order of this court."

The report of the referee on which that order was entered stated fully the transactions leading up to and following the petition in bankruptcy, so far as they affected, or could affect, the issue. It appeared thereby that Mrs. Cole's indebtedness consisted of indorsements of her husband's notes, held by several banks in Biddeford and Saco, amounting in all to $2,725. On September 14, 1903, Mrs. Cole, whose husband then lived at Saco, sold the homestead there for $3,800 in actual cash—that is, bills—which bills were paid directly into the hands of Mr. Cole. Less than two weeks after selling the homestead, Mr. and Mrs. Cole together moved to Wakefield, where they established a new home, and where they were when the petition in bankruptcy was filed. A day or two before the close of October, 1903, the cashier of one of the banks holding the notes of Mr. and Mrs. Cole called on them at Wakefield, and sought to secure an adjustment. During the conversation, in reply to a question to Mr. and Mrs. Cole as to what they had to say, she answered: "We have not got anything to say." Other conversation occurred, during which Mrs. Cole said that they did not have the money, adding: "We have sent it to his brother"—meaning the brother of Mr. Cole. The referee reported also other evidence, including that of Mr. Cole, which suggested, among other things, certain remarkable improbabilities with reference to Mrs. Cole's statement that the money had been sent to Mr. Cole's brother. No reason for moving to Wakefield was suggested except a purpose

of carrying out of the jurisdiction the money received for the homestead.

Thereupon, the court found in March, 1905, specifically as follows:

"The referee has found affirmatively that the bankrupt has under her control the balance of the fund, to the amount of $2,425, that she had possession or control of it at the date of the filing of the petition in bankruptcy, that she has withheld and concealed the same from her trustee, and is now withholding and concealing the same from him."

On the proceeding before us to revise the order of March 4, 1905, we pointed out that we were not then obliged to go into any question whether Mrs. Cole was in manual possession of the money, or exercised such absolute control of it as would enable her to turn it over to the trustee; but, on the case now before us, it remains for us to consider whether, on the record here, we can find that it was permissible for the District Court to find a contemptuous—that is, a willful—refusal on the part of Mrs. Cole to turn over the moneys to the trustee, with the accompanying ability on her part to do so.

On this immediate proceeding Mrs. Cole testified orally, and other testimony was introduced. If the case rested, as Mrs. Cole now claims it should rest, on this subsequent testimony alone, we would be compelled to say, without hesitation, that there were in the record no proofs which would permit the District Court, or any court, by reason thereof, to find Mrs. Cole in contempt on March 4, 1905, or at any subsequent time; but at this hearing Mr. Anderson appeared for Mrs. Cole, and Mr. Cleaves for the trustee in bankruptcy, and the following occurred:

"Mr. Cleaves: I would like to have it appear that I offer the entire record which went to the Circuit Court of Appeals, or rather, I offer all of the testimony and documents which have been taken or used in this case in bankruptcy.

"Mr. Anderson: And that, may it please your honor, if your honor considers it—I understand we are taking it de bene—I desire to have whatever rights we have saved.

"The Court: The stenographer is to write out the testimony taken at this hearing, and the offers made by counsel. Upon this record and upon such part of the printed record as the court may find material and legal evidence—upon this evidence counsel shall be heard in court, and are requested also to prepare suitable and sufficient briefs, setting forth their exact positions in the premises."

With reference to this, the opinion of the learned judge of the District Court of November 6, 1906, said as follows:

"In the case before me I have treated the order to show cause as an independent proceeding, and have applied the rules of evidence pertinent to a criminal case. I find, upon the threshold of the proceeding, the decree of the Circuit Court of Appeals that the bankrupt pay over certain money to the trustee, and that she have her day in court upon the question whether she shall be held to be in contempt. In pursuance of the request of the respondent, I have considered only the testimony of the bankrupt herself, the greater part of which I have given in full, and of Mr. Jordan, her nephew, together with her examination before the referee, which she has verified and made part of her testimony. With reference to the other rulings, requests for which have been preferred by the learned counsel for the respondent, I do not find it necessary to pass upon them affirmatively and in detail; but it will be seen that I have adopted substantially the rules of law which he has invoked

in the proceeding. I have also examined the records of the District Court, so far as they are material, relevant, and admissible."

Whatever the learned judge might have examined in the records of the District Court according to what we have quoted from him, he would have found nothing except the petition in bankruptcy, the schedules filed by the bankrupt, her prior examination, various proofs of debt, the ordinary bankruptcy proceedings, and the depositions of witnesses taken in the presence of the bankrupt, and subsequently cross-examination by her. While the introduction of these at the stage of the case to which the petition now before us refers would not be permissible according to the strict rules of the amendments to the Constitution in reference to criminal procedure, yet it would seem that they are of such authority, and arose under such circumstances, that they would come within the various expressions which we have cited from the Supreme Court, in that the use of them would have due regard to substantial rights, and even greater regard thereto than the affidavits which we have seen are sometimes used with reference to proceedings for contempts. Moreover, where a proceeding for contempt is on the heel of a strictly civil proceeding, like a decree in equity, or, in this case, like the order of the court of March 4, 1905, it would be almost an obstruction of justice if the court and parties could not refer back and make liberal use of what led up to the principal decree. But the conclusion we reach renders it unnecessary that we should dispose of all the questions submitted to us, and which we have discussed, or determine what the learned judge of the District Court meant by "the records of the District Court," etc., or whether he could properly make an examination, as stated by him, without exhibiting to the parties specifically what he regarded as material and admissible, so that the parties might make a direct issue with reference thereto if they saw fit. Examining all the proceedings which it is possible for the learned judge to have examined, we think we have stated the most significant facts that appear therefrom, and, although the case is a troublesome one, yet, taking it by and large, notwithstanding the combined judgment of both the learned judge of the District Court and the referee, which, of course, in accordance with the decisions, should have great weight on a question of fact like this, we find that there was in fact not sufficient evidence of the kind which the law requires on the exact issue pending here; that is to say, whether Mrs. Cole willfully refused to pay over moneys which it was necessary to show that she could pay over at the specific date to which the orders of the court properly related. Under the rules which touch petitions of this character, which permit only revision in matter of law, we could not interfere with the decree of the District Court of March, 1905, because, under the circumstances, we would not be justified in declaring that there was not sufficient to permit the District Court to pass on the question whether, as a result of collusion between Mrs. Cole and her husband, a mere debt according to the rules of civil procedure might not have been established against both her and her husband, or either of them; but when it comes to the proposition that, at any specific date or time to which the proceedings might refer,

Mrs. Cole had so completely under her control funds which she could command that her failure to command them was a willful contempt of the court, or when it comes to the issue that funds might not have been squandered, or even wrongfully disposed of by sending them to her husband's brother, or in some other way, there is such a failure of proof that even the determination of the District Court cannot supply it. With reference to the character of the proofs required for this purpose, we approve the language of Judge Shelby in Samel v. Dodd, 142 Fed. 68, 72, 73 C. C. A. 254, 259:

"It follows unquestionably that an order imprisoning a bankrupt for contempt for failure to obey a decree to pay money or surrender goods into court is erroneous as matter of law, where the bankrupt by sworn answer denies that he has the money or the goods, and it does not appear clearly and affirmatively from the record, notwithstanding his denials, that he has the power to comply with the decree."

As our conclusion can hardly become a precedent for any future case than can arise, we do not deem it profitable to enlarge in regard thereto. It is to be borne in mind that our determination deprives the trustee of no ordinary rights given him by the law. It merely shuts him out from the extraordinary proceeding which, in case of an error on the part of the court, would result in most unfortunate and painful injustice. In our previous decision in regard to this proceeding we found, as we have said, sufficient to enable us to sustain the District Court in entering a judgment against Mrs. Cole for the amount claimed by the trustee, and we leave him the ordinary remedies which the law gives for collecting a judgment from a debtor who is insolvent, or who claims to be so.

Let there be a decree reversing the decree of the District Court, with costs for the petitioner.