In re ROGOWSKI.

(District Court, N. D. Georgia. December 14, 1908.)

BANKRUPTCY (§ 229*)—ORDER TO SURRENDER PROPERTY—FINDINGS.

A finding that a bankrupt had in his possession or under his control goods, merchandise, etc., of the value of $10,580.74 which he withheld, secreted, and concealed, but which failed to more specifically describe the property or state where any of the goods were, was insufficient to justify an order requiring surrender under penalty of commitment for contempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 385; Dec. Dig. § 229.*]

Rule for Contempt.

Arnold & Arnold and V. A. Batchelor, for bankrupt.
Robt. T. Daniel and Wm. H. Beck, for trustee and creditors.

NEWMAN, District Judge. The opinion filed by W. E. H. Searcy, Jr., referee in bankruptcy in this case, on April 16, 1907, states the history of the matter now before the court up to the time the report was filed. It is as follows:

"On December 12, 1907, an involuntary petition in bankruptcy was filed by creditors against A. Rogowski, and on the 27th day of the same month he was duly adjudged a bankrupt. And the matter of winding up his estate was referred to the undersigned, as one of the referees of said court.

"The first meeting of creditors to prove claims, elect a trustee, and examine the bankrupt was called to convene at the office of the referee in Griffin, in said district, on January 18, 1907, notice of which was given as required by law.

"A large majority of the creditors in number and in amount claimed to be due by the bankrupt met and unanimously elected Thos. J. White, who was then acting as receiver under an order of Judge Newman, as trustee of said bankrupt's estate. He immediately qualified and gave the bond required, which was approved.

"Pending the examination of the bankrupt, certain of the creditors through their attorney, Judge Robt. T. Daniel, filed a petition charging that 'Just prior to the filing of the petition in bankruptcy against A. Rogowski he had a stock of merchandise worth from sixteen to twenty thousand dollars,' and that when the 'receiver took charge there was only a stock of about five thousand dollars turned over to him by the bankrupt,' and further charging that said bankrupt 'is withholding a large amount of assets from the trustee,' and praying that the undersigned, 'as a special master, inquire into and ascertain the facts and report to the court.'

"On the day set for the examination of the bankrupt, he appeared and was examined by the referee. Thereafter, on said day and at various times, testimony of the bankrupt and many other witnesses was taken before the undersigned as special master. This testimony is herewith transmitted as a part of the record in this case.

"Pending a finding of the facts and the law by the special master on the issues involved in this hearing, the trustee filed his verified petition against said bankrupt, charging specifically that merchandise to the amount of $12,334.53 and money to the amount of $10,175.40 were being withheld and concealed by the bankrupt, and that the bankrupt refused and failed to turn over and deliver up the same to the trustee when demand was made on him so to do; and praying that said bankrupt show cause before the referee, on a day to be set, why he should not deliver up said merchandise and money, or be punished as for contempt for his failure to do so. The hearing

of this petition was set down for March 28, 1908, and a copy of the petition and order was served on the bankrupt on March 23, 1907.

"On the day set for the hearing the bankrupt with his counsel appeared before the referee and filed his answer. The trustee filed an amended petition, which was allowed, and the hearing of the matter at the request of the bankrupt's counsel was adjourned until April 8, 1907. On this date all parties appeared before the referee, and the taking of testimony was begun. This testimony together with the pleadings above referred to are herewith transmitted as a part of the records in this case.

"I have patiently and with great care listened to the testimony in this case, and in the same way I have gone through the evidence after it was transcribed into longhand by the stenographer, and after seeing the witnesses and knowing them and hearing them testify, and observing their demeanor on the stand and in court, I find that the following facts are proven and established:

"(1) The bankrupt destroyed his original invoices of merchandise bought by him.

"(2) The bankrupt has not produced the original book kept by him in his business for the year 1906. He gives as the reason for this nonproduction of the book that a cup of molasses sent to him with his breakfast one day was turned over on and spoiled the book. He does not know when this was. He cannot give the month of even the season of the year when this strange but timely catastrophe occurred. His bookkeeper, Brown, places the time as early in September. This is as near as he can locate it. It is claimed by both Rogowski and Brown that the entries on the original book on which molasses was spilled were correctly copied in this new book, but no attempt is made by either of them to explain why it was necessary to copy from the old book into the new book if the old book was sufficiently preserved and in good enough order to enable them to make correct transcripts. Why not have kept the old book to show what it contained and open a new one to show future transactions? And, in any event what was the necessity for throwing away or destroying the old book? The conclusion is irresistible to my mind that the book, if presented in court, would have shown facts prejudicial to the bankrupt, and would have disclosed a state of affairs that would have prevented his discharge in bankruptcy, or perhaps worked more serious consequences to him. Consequently it was destroyed. Especially is the conclusion more certain in the light of the other testimony and circumstances, which show the discrepancy between the amounts turned over and the amounts he should have turned over to the trustee, and also since it is proven beyond dispute that this book was not purchased until November 19, 1906, less than a month before he was closed. And it will be observed that Rogowski testified in this last hearing, on April 8 and 9, 1907, that his bookkeeper, Brown, told him several weeks before he was closed up that he was broke, and that when he heard this he got on a spree and spent several hundred dollars. The evidence not only justifies, but demands, a finding that this book was made up specially to be used in case of litigation in the state or federal courts, and does not speak the truth of Rogowski's business for the period of time it purports to cover. Therefore, in view of the two foregoing findings, it follows that we must look to other sources than the book he produced for the facts connected with his business during the year 1906, and can only consider the book in so far as it may be taken as in the nature of an admission in writing made against himself.

"(3) That a short time before the original petition in bankruptcy was filed the bankrupt was possessed of a very large stock of merchandise. This stock was so large and full that it attracted the attention of citizens and merchants as they passed by the store. It caused comment, and fixed itself on the memory of these men who have testified. The character of these witnesses are above suspicion, and their ability as merchants, and their ability in matters respecting which they have testified, are well known and respected. Again, Rogowski fixed the quantity and the quality and value of his stock about the last of October, 1906, when he said he had a pretty good stock, about as good as he had ever carried, and worth about $20,000. Rogowski has never in terms denied this statement, but had only sought to

avoid it or explain it by saying that he was only trying to stand or hold off one of his creditors whom he could not pay. As the amount of this creditor's claim against him was only about $40, it will hardly be presumed to have been necessary to fix the value of the stock so high for this purpose; and it appears from the testimony of this witness, who was a merchant of the same city as the bankrupt, that, after having his attention called to this stock, his judgment was that Rogowski had put the proper value on it. And about the same time he told William H. Beck, Esq., an attorney and former referee of this court, that he had one of the best stocks that he had ever had, and was in the best fix financially he had ever been in, and had one of the largest stocks he had ever carried, but he could not convert it into cash on account of the weather. These statements are not in terms denied by the bankrupt; he only says that he cannot remember whether he made these statements or not. Again, Rogowski in his testimony fixes the value of his stock on the 1st of September, 1906, at $12,000, and this was before the arrival of his fall and winter goods. The net amount of goods admitted by the bankrupt and shown by his books to have been received into this stock of goods was more than $6,000. This $6,000 represents, as stated, the net amount of goods received. He had received more goods, but from the gross amount of goods received has been deducted the amount of sales of merchandise, less the profit he received on these sales as proven, leaving the $6,000 as the amount to be added to the value of the stock as fixed by him. So it is established that he was possessed of this large stock of goods worth at least $18,000 about the last of October or the first of November, just a short time before the store was closed. When the receiver took charge he found only $4,423.53 worth of merchandise. What had become of the balance of this large stock of goods? It was not sold, because the sales of merchandise accounted for by the bankrupt since the 1st of November count up only $4,763.74, including his profit, which has been proven to be 30 per cent., and during this same period large quantities of goods, amounting, at cost, to $3,820.40, were received to take the place of the goods sold.

"That these goods were spirited away by the bankrupt there can be no doubt. One witness testified to seeing during this period two large packing trunks that required several people to handle being moved away from the side entrance of the bankrupt's store early in the morning. The bankrupt does not deny this, and he gives no account of these trunks. Another witness heard heavy boxes, at least two, being carried by several people through the back alley at night from the direction of the rear of Rogowski's store and loaded on the back stoop of his son-in-law's (Goldstien) store, the place of business of this witness being situated just between these two stores. Another witness saw two large boxes or trunks being carried by several people at night from the direction of the rear of Rogowski's store to this same son-in-law's store, and, while an effort was made to impeach this witness, the effort failed of itself, without regard to the fact that this witness was sustained as to his general character and veracity by a dozen citizens and officers of this county. And, again, other witnesses saw goods at various times being carried by the armful from Rogowski's store to his son-in-law's store. All these transactions were separate one from the other, and all here referred to occurred just shortly—a few weeks—before the petition in this case was filed, and at just about the time Brown had told the bankrupt, as above referred to, that he was broke, and between that time and the time the store was closed.

"These goods not having been returned to the merchants from whom they were purchased, or applied by Rogowski to the payment of claims against him, or sold and the money accounted for, they must be and are still in his possession or custody or under his power and control. What amount of goods and their value is thus held by him? This can be answered beyond question or doubt from the bankrupt's own testimony and books. The bankrupt had on the last of October a stock worth $18,000. He received in November and December, as shown by his books, merchandise of the value of $3,820.40; or, in other words, he must account for the amount of merchandise that these two items make when added together ($18,000+$3,820.40), to be accounted for, $21,820.40. The bankrupt accounts for this

merchandise in the following way: Turned over to the receiver, $4,423,53; he sold, as shown by his books in December and November, merchandise of the cost value of $3,664.42; goods recovered from S. W. Goldstien, son-in-law of Rogowski, in a separate proceeding before the referee, $765.31; or, in other words, he accounts for the amount of merchandise that the three above items make when added together, $8,853.26, which leaves a shortage in merchandise between the amount he thus accounts for and the amount he should account for of the difference between $21,820.40 and $8,853.26, or merchandise of the value of $12,967.14.

"But this amount contemplates the reduction of the amount, or value in dollars, of the merchandise sold by the bankrupt between September the 1st and the date he was closed up, by deducting from the gross amount of cash sales the profit it is proven he was receiving of 30 per cent., which amount was $2,386.40. To be perfectly fair and just to the bankrupt, let us presume he did not make this or any other profit, but sold the goods at cost, and give him credit for this profit by adding the amount above found to the amount heretofore adjudged that he had accounted for, viz., $8,853.26, and we have, as the amount or value of merchandise accounted for, $11,239.66, and by deducting this last amount from the amount heretofore adjudged that he should account for, viz., $21,820.40, and we have the merchandise that the bankrupt fails to account for, though possessed of it beyond doubt, as we have shown above, of the value of $10,580.74. This amount of merchandise I find and adjudge and decree that, the bankrupt is withholding, secreting, and concealing from the trustee, and that said merchandise consisting of boots, shoes, dry goods, clothing, notions, and furnishing goods and other goods kept by him in this store and set out in the testimony and the pleadings and proven claims, thus withheld, secreted, and concealed by the bankrupt is within the possession or custody, or in the power and control, of the said A. Rogowski, bankrupt.

"It will be observed from the foregoing, and by reference to the pleadings and evidence, that while much has been alleged and testified about in reference to a shortage in the cash of the bankrupt, and his unparalleled, unreasonable, and outrageous extravagance in the expenditure of money that should have been paid to his creditors and of right belonged to them, and that would have gone to them had the bankrupt been honorable in his business dealings, and while it is unquestionably proven as true by the evidence that he is short many thousand dollars in cash, and that he recklessly and dishonorably squandered money of right belonging to his creditors, I have doubted if in this character of proceeding he could be held responsible for them, and I have out of an abundance of caution eliminated them from consideration in determining this case, and have only considered and passed on the question of merchandise withheld, secreted, and concealed, leaving off the question relating to money for the consideration of the grand jury, if it is hereafter deemed proper to submit it to their consideration.

"Therefore it is ordered, adjudged, and decreed that said A. Rogowski, bankrupt, instanter deliver up and turn over to Thos. J. White, trustee, the merchandise found and adjudged as herein above set forth to be withheld, secreted, and concealed by him, said merchandise being of the value of $10,580.74, or, in default of so doing, he will be held and adjudged to be in contempt of the honorable United States District Court for the Northern district of Georgia, and this proceeding will be certified to the judge of said court to the end, that said bankrupt may be punished for such contempt as is by law provided."

There were exceptions to this report, and after argument the court made an order referring the matter back to the referee for "a more specific finding, if such finding can be made, on the evidence already taken by him as to goods or cash, or both, withheld by said bankrupt, and that he report back to the court his findings."

On May 9, 1908, the referee made an additional or supplemental report as follows:

"On April 16, 1907, the undersigned, acting as referee and special master in the above case, made a finding of fact that said bankrupt was withholding from the trustee merchandise of the value of $10,580.74, and entered an order directing him to turn over and deliver to said trustee the merchandise so found to be by him withheld, and recommending that in default thereof said bankrupt be committed to jail by the judge of the United States District Court. Exceptions were filed in due time to this finding and recommendation, and, on review of the same, the judge of the District Court remanded the case for the undersigned to make a specific finding as to the merchandise found to be withheld. The case has been reargued before me, and after consideration of this argument, and a review of the evidence taken in said case, I find, and so report to the court, that the original finding hereinbefore referred to is as full and particular with reference to the description and identification of the merchandise found to be withheld by said bankrupt from the trustee as is justified by the evidence taken in this case. I further find that there is no testimony which would authorize a finding that any part or all of said merchandise consisted of dry goods, or notions, or clothing, or shoes, or any other particular class of merchandise, other than to find and say that it must of necessity have consisted of such articles of merchandise as was bought and carried in stock by the bankrupt. This is as full, definite, and particular description of the merchandise in question as may be made from the evidence in the case. I further find that under the evidence submitted in this case it is impossible to comply with the requirements made by Judge Maxey and Judge Shelby, in order to make out and sustain a rule for contempt against a bankrupt for withholding merchandise from his trustee, as laid down by them in the case of Samel v. Dodd, 142 Fed. 68, 73 C. C. A. 254, 16 Am. Bankr. Rep. 163 et seq.

"I, therefore, return the record herewith for such further action by the judge of the District Court upon the former and this report as may seem to him appropriate under the evidence in this case and the law.

"I have made this finding in the nature of a report to the judge for the reason that I construe his order remanding the case to have only this effect. If, however, the order is intended to require of me a recommendation in the premises, I am of the opinion that, under the rule laid down in the above-cited case, it would be impossible thereunder, and under the evidence submitted, to hold the respondent and punish him for a failure to comply with the order heretofore entered in this case, and I, therefore, recommend that the rule be discharged."

Exceptions have been filed to this report and argument has been had upon the same going again into the whole contempt case. If the rule be adopted, announced in some cases, that where a bankrupt shortly before his failure has on hand a large stock of merchandise, and when proceedings in bankruptcy are instituted he is found to have but a small amount of goods, the stock being depleted to such an extent that it could not have occurred in the ordinary course of business, and there are circumstances to indicate that the goods have been purposely and fraudulently removed so as to prevent their going into the hands of the trustee in bankruptcy, that then the court may require the bankrupt to produce the goods or give some reasonable explanation of their disappearance, and on his failure so to do may hold him for contempt, then a case is made out by the record here. See concurring opinion of Sanborn, Circuit Judge, in Boyd v. Glucklich, 116 Fed. 131–142, 53 C. C. A. 451, and cases cited. On the other hand, if the rule be that, notwithstanding such condition of things as indicated above, the receiver, trustee, or creditor proceeding against the bankrupt is unable to point out any particular property or cash so removed, and its location, definitely and specifically, contempt proceedings are not justified, then no case is made here. I think the latter rule has been adopted by the Cir-

cuit Court of Appeals for this circuit in Samel v. Dodd, 142 Fed. 68, 73 C. C. A. 254.

In the first report made by the referee in this case, given above, he found that the bankrupt had failed to account for a large amount of goods, and that he had the same in his possession or control. The trustee did not point out in this report where any of the goods were, or locate them in any definite way. He simply found they had been in the stock a short time before the bankruptcy proceedings were instituted, and that they had disappeared and the bankrupt made no satisfactory explanation; and there was evidence to show that goods had been sent out surreptitiously from the bankrupt's store. But the report failed entirely to locate any of the missing goods. The finding of the referee coming before the District Court for review, in view of the failure on the part of the referee to locate any of the goods which he stated he believed had disappeared, an order, as shown, was made sending the case back to the referee, so that he might, if he could, state where the goods had gone, where they were, and, as far as possible, describe and locate them. In his subsequent report he says that this is impossible, and all that could be stated about the matter was contained in his original report, and he finds upon further consideration that no case is made to justify the court in holding the bankrupt as for contempt of court. In this opinion I am compelled to concur, because it does not present to my mind any stronger case than was the case of Dodd, Trustee, v. Samel et al., the decision in which case by the Circuit Court of Appeals (Samel v. Dodd) is referred to above.

Under this decision the last report of the referee in this case seems to be correct, and an order may be taken overruling the exceptions and confirming the report.