SAMEL et al. v. DODD.

(Circuit Court of Appeals, Fifth Circuit. January 2, 1906. On Rehearing, February 6, 1906.)

No. 1,465.

1. BANKRUPTCY—ORDER REQUIRING SURRENDER OF MONEY OR PROPERTY—PETITION FOR REVIEW.

On a petition to superintend and revise, filed under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], the Circuit Court of Appeals can review an order of a District Court requiring a bankrupt to turn over money or property to his trustee only in matters of law, and the opinion of the District Court may be looked to for the purpose of ascertaining what propositions of law were determined.

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. CONSTITUTIONAL LAW—IMPRISONMENT FOR DEBT.

An order requiring a bankrupt to pay over money or surrender property forming part of his estate is not one for the payment of a debt, and his commitment for refusing to obey such an order is not an imprisonment for debt.

3. BANKRUPTCY—ORDER TO PAY MONEY—FINDINGS TO SUPPORT.

A finding that bankrupts have in their possession or under their control goods and merchandise the property of their estate in bankruptcy, does not justify an order requiring them to pay over the value of such goods in money under penalty of commitment for contempt. In such case the order should describe the property with reasonable certainty and require its surrender in specie.

4. SAME.

The power of a court of bankruptcy to order a bankrupt or other person to turn over money or property found to belong to the bankrupt estate under penalty of imprisonment for contempt should not be exercised in doubtful cases.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of Georgia, in Bankruptcy.

Harry Dodd, receiver of Springer, Samel & Saul, bankrupts, a firm composed of I. Springer, A. Samel and S. Saul, filed a petition to require the bankrupts to show cause why they should not deliver goods, wares, and merchandise, or money in their possession, custody, or control, to the value of $40,000, and in default thereof why they should not be adjudged in contempt. The receiver was subsequently elected trustee, in whose name the proceeding was thereafter prosecuted. The petition was allowed by the court, the bankrupts duly answered, and a hearing was had, with the result that the referee found adversely to them. The matter then went to the judge for determination upon

exceptions to the report of the referee. By an order, passed March 21, A. D. 1905, of which the following is a copy, the bankrupts were adjudged guilty of contempt and ordered to pay over to the trustee the sum of $2,417.83: "The trustee in bankruptcy in the above-noted case having filed contempt proceedings against the said bankrupts, and the matter coming on for a hearing before the court on exceptions to the report of the referee to whom the matter had been referred, and the court having this day rendered his opinion upon said proceedings, therefore, in accordance with said opinion, it is adjudged by the court that the said I. Springer, A. Samel, and S. Saul, constituting the firm of Springer, Samel & Saul, as individuals and as partners, are guilty of contempt in failing and refusing to turn over to the trustee assets belonging to the bankrupt estate, in violation of the bankrupt law. And it is ordered and adjudged by the court that the said named parties pay over to Harry Dodd, the trustee in bankruptcy, the sum of twenty-four hundred, seventeen and 83-100 dollars ($2,417.83), and all costs of this proceeding to be taxed by the clerk, including the stenographer's bill, and upon failure to make such payment at the expiration of five (5) days from the date of this judgment they be committed to the Fulton county jail by the marshal of this district, there to remain until they shall have purged themselves of contempt, or until further order of this court. It is further ordered and adjudged that, in accordance with the opinion of the court this day filed, the contempt proceedings be retained and held open for any other and further action, as the court may be advised, and until the determination of any proceedings the trustee by advice of his counsel may desire to institute, looking to the ascertainment of the amount of goods which went into the possession of J. Saul & Co., and the character of their holding."

This order was modified by the court on April 1, A. D. 1905, by an order of which the following is a copy: "Upon considering the order passed in the above-stated matter on the 21st day of March, 1905, it is ordered that so much of said original order as requires the bankrupts, I. Springer, A. Samel, and S. Saul, to pay all the costs of the contempt proceedings to be taxed by the clerk including the stenographer's bill, within five days from said order, be stricken, and that said order be so changed as to require the bankrupts to pay to the trustee only the amount of said judgment, viz., $2,417.83, and that the time for the payment of said sum be extended to Saturday, April 1, 1905. It is further ordered that the clerk tax the costs in said case against the defendants, as in such cases provided by law."

A motion for rehearing made by the bankrupts was overruled; and the following statement, referred to by counsel for the petitioners as a "further decree" was filed by the court, April 10, A. D. 1905: "The question having been raised by counsel as to how far the order made in this case on March 21, 1905, and renewed on the 7th day of April, 1905, shall be enforced: I do not believe this rule should be enforced against I. Springer. I am satisfied from Springer's evidence, and from the other evidence in the case, that it is not in his power to produce any of the property that is now being withheld from the trustee. I think the other two defendants, Samel and Saul, can do so. It may be that Springer was a party to this fraudulent withdrawal of goods but the other parties to the transaction have, as I believe, for reasons of their own, refused to allow Springer to participate further in the proceeds of this fraudulent transaction, and he has no further control of the goods so withdrawn."

The bankrupts Samel and Saul thereupon filed their petition to revise, in matters of law, the orders and decrees of the District Court.

Arthur Heyman and Victor L. Smith, for petitioners.

John M. Slaton and Benj. Z. Phillips, for respondent.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge, after stating the facts, delivered the opinion of the court.

The following propositions seem to be settled law: (1) In proceedings like the present the Court of Appeals may superintend and revise the action of the District Court only in matters of law. Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]; Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Purvine (5th Circuit) 96 Fed. 192, 37 C. C. A. 446; In re Rosser (8th Circuit) 101 Fed. 562, 41 C. C. A. 497; Printing Company v. Brewing Company (6th Circuit) 101 Fed. 699, 41 C. C. A. 614; In re Richards (7th Circuit) 96 Fed. 935, 37 C. C. A. 634; In re Taft (6th Circuit) 133 Fed. 511, 66 C. C. A. 385; In re Pettingill & Co. (C. C. A. 1st Circuit) 137 Fed. 840; In re O'Connell (C. C. A. 1st Circuit) 137 Fed. 838. It was further held, in the case of In re Pettingill & Co., supra, that the opinion of the trial court may be looked to for the purpose of determining in a general way the propositions on which the case has been disposed of, and especially the questions of law which were passed on. (2) Jurisdiction exists in courts of bankruptcy to require, in a summary manner, the bankrupt to pay over money, or to surrender other property in his possession and under his control belonging to his estate. And for disobedience of such order the court has the power, by attachment for contempt, to enforce compliance. Mueller v. Nugent, supra; Trust Co. v. Wallis (3d Circuit) 126 Fed. 464, 61 C. C. A. 342; In re Purvine, supra; Boyd v. Glucklich (8th Circuit) 116 Fed. 131, 53 C. C. A. 451; In re Rosser, supra. (3) The order to pay over money, or to surrender other property as the case may be, in the possession of the bankrupt and forming part of his estate, is not an order for the payment of a debt, but an order for the surrender of assets of the bankrupt placed in custodia legis by the adjudication; and his commitment upon refusing to comply with the order is not imprisonment for debt. Mueller v. Nugent, supra; In re Purvine, supra; In re Rosser, supra.

Tested by the principles of law above announced, and taking the facts as they are embodied in the opinion of the trial court, the question arises: Was the order, requiring the petitioners to pay over to the trustee the sum of $2,417.83 a valid order? The trial court found, as matters of fact, that a large amount of goods, not specifically described, was withdrawn by the bankrupts from their stock; that such goods were held by them in some way in fraud of their creditors; and that it was within the power of the bankrupts to produce the same and turn them over to the trustee. The bankrupts, by the terms of the order, were adjudged guilty of contempt "in failing and refusing to turn over to the trustee assets belonging to the bankrupts' estate, in violation of law." And it was further ordered and adjudged, following the language of the order, "that said named parties pay over to Harry Dodd, the trustee in bankruptcy, the sum of $2,417.83," and upon failure to make such payment they were ordered committed to jail. It is thus observed that the court found goods, wares, and merchandise to be in possession of the bankrupts, and, in effect, rendered judgment for their value, and ordered the commitment of the bankrupts until the amount should be paid. We are of the opinion that the order cannot be sustained. If the bankrupts had in their possession

merchandise, which should have been delivered to the trustee, the appropriate order would have been for the delivery of merchandise. If they had money, which formed part of their estate, they should have been required to pay over money.

It should be borne in mind that the proceeding before us is not a plenary suit in equity, in which the court "may adapt its decrees to all the varieties of circumstances which may arise, and may vary, qualify, restrain, and model the remedy so as to suit it to mutual and adverse claims, controlling equities, and the real and substantial rights of all the parties." 5 Enc. Pl. & Pr. 958. Nor is it such a suit at law in which the parties may, by appropriate action, recover specific property or its value. But the present proceeding is one of a summary nature, and is invoked for the purpose of bringing within the reach and control of the bankruptcy court specific property found to be in the possession of the bankrupt and by him unlawfully withheld. The order should describe the property with reasonable certainty in order to assure its identity, and the command of the court to the bankrupt should be to surrender the very property sought to be recovered. In such cases the order to deliver should be based upon clear and convincing proof that the party charged has possession and control of the property, since the penalty of disobedience is imprisonment for contempt. The order operates in personam, upon the person of the offender, by requiring him to do the thing commanded upon pain of punishment for refusal; and such an order is erroneous, as matter of law, unless it plainly and affirmatively appear from the record that he has the power to comply with its requirements. If, having the property, he fail to surrender it in obedience to the order of the court, he voluntarily submits himself to the consequences.

But it is not within the power of the court, in such a proceeding, to render judgment for the value of property ascertained to be in the possession of, and contumaciously withheld by, a bankrupt, and attach him for contempt upon his refusal to pay. Such procedure would approach dangerously near the line, if it did not overstep it, of imprisonment for debt. While bankruptcy courts are invested with power, as we have already shown, to require bankrupts to surrender their property and to enforce obedience to the order by attachment for contempt, yet the power is "far-reaching and drastic and should be exercised with cautious discretion." Indeed, it may be said that it should never be exercised, except in a plain case, and always with due regard to the constitutional rights of the citizen. In this immediate connection the apt words of Mr. Justice Bradley may be appropriately employed:

"It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be, 'Obsta principiis. " Boyd v. United States, 116 U. S. 635, 6 Sup. Ct. 535, 29 L. Ed. 746.

It is objected, however, that the failure of courts to exercise with a firm hand the power to punish, by contempt proceedings, designing and unscrupulous bankrupts, would practically deprive the law of its efficacy and convert it into a mere shield for the protection of dishonest debtors. In doubtful cases the power should not be exerted; and, in

·view of the stringent provisions of law punishing fraudulent conduct and other forms of dishonesty on the part of the bankrupt, the objection is untenable. The original act not only contains ample provisions for the punishment of the bankrupt, in the regular mode of trial by jury, for false swearing and for the fraudulent disposition of assets (section 29, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433]), but section 14 (30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]), as amended by the act of February 5, 1903 (32 Stat. 797, c. 487 [U. S. Comp. St. Supp. 1905, p. 684]), renders it extremely difficult, if not impossible, for the contumacious or dishonest bankrupt to secure a discharge from his indebtedness. "It will thus be seen," said Judge Caldwell, speaking for the court in Boyd v. Glucklich, 116 Fed. 139, 140, 53 C. C. A. 459, 460, "that the act makes the amplest provision for punishing fraudulent conduct and false oaths on the part of the bankrupt. The fraudulent bankrupt gains nothing by being adjudged a bankrupt, but is punished criminally and denied a discharge. And his creditors lose none of their rights, for they may resort to all the remedies known to the law for the collection of their debts against the bankrupt, the same as though he had never been adjudged a bankrupt. There is therefore no occasion for the exercise by the court of bankruptcy of any doubtful power of jurisdiction, either for the purpose of punishing the bankrupt or protecting his creditors."

There appears in the record a brief statement filed by the court, in which the judge expressed the belief that the rule should not be enforced against Springer. This statement then proceeds:

"It may be that Springer was a party to this fraudulent withdrawal of goods, but the other parties to the transaction have, as I believe, for reasons of their own, refused to allow Springer to participate further in the proceeds of this fraudulent transaction, and he has no further control of the goods so withdrawn."

Counsel in the case have treated the statement of the judge as an order of court relieving Springer of the duty of complying with the order of March 21, 1905. We do not so consider it. The statement does not purport to be an order, and it cannot be so construed. It merely expresses belief that the rule should not be enforced against Springer without supplementing the expression of such belief with an appropriate order of the court. It may be that it was the purpose of the court to dismiss the proceeding as to Springer. If so, the purpose should be evidenced by a proper order.

In the consideration of this case we have confined our attention to those points which we deemed it our duty to consider, and have refrained from discussing other questions suggested by counsel, for the reason that they do not properly arise upon a petition for revision.

The court is of the opinion that the order sought to be revised should be reversed, and the cause remanded for further proceedings not inconsistent with the views above expressed. And it is so ordered.

SHELBY, Circuit Judge. I concur in the opinion of the court just read, and in the judgment of reversal for the errors pointed out.·

Section 41 of the Bankruptcy Act of 1898 (Act July 1, 1898, c. 541,

30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]), authorizes the bankruptcy court to punish persons who disobey any lawful order of the court. This section, in that regard, confers no new power. All federal courts can enforce obedience to their orders by proceedings for contempt. Rev. St. U. S. § 725 [U. S. Comp. St. 1901, p. 583]. But, unless the person can perform the act commanded, the court has no authority to punish for a failure to perform it. Walton v. Walton, 54 N. J. Eq. 607, 35 Atl. 289; Adams v. Haskell & Woods, 6 Cal. 316, 65 Am. Dec. 517; Rapalje on Contempt, §§ 17, 115; American Trust Co. v. Wallis (by Gray, Circuit Judge) 126 Fed. 464, 61 C. C. A. 342. Any other rule would be unreasonable and unjust. To imprison one for not doing what he cannot do is inconsistent with the principles of individual liberty. There is no statute or law which confers such authority. Imprisonment under such circumstances for failure to pay money may force the friends of the prisoner to raise and pay the required sum, but such imprisonment is unwarranted by law in a jurisdiction where imprisonment for debt is forbidden. Where the prisoner has the power to comply with the order, having the money or thing in question in his possession, he may, of course, be punished for his failure to surrender it, without conflict with any rule of law against imprisonment for debt. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. It follows unquestionably that an order imprisoning a bankrupt for contempt for failure to obey a decree to pay money or surrender goods into court is erroneous as matter of law, where the bankrupt by sworn answer denies that he has the money or the goods, and it does not appear clearly and affirmatively from the record, notwithstanding his denials, that he has the power to comply with the decree. The bankrupt is at least entitled to that much protection, if, indeed, the courts are to refuse to follow the wise rule of the common law which makes the sworn denials of the answer sufficient defense to the contempt proceedings, leaving the question of the truth of the answer to be contested in a prosecution for perjury. Boyd v. Glucklich, 116 Fed. 131, and authorities cited on page 141, 53 C. C. A. 451, 461.

The bankrupts, in their answers, have sworn that they have not in their possession or under their control the money or goods involved in this proceeding. It seems to me that any evidence that conclusively showed they presently had in possession and control either the money or the goods would necessarily show where the same was kept or deposited, so that it could be reached by the process of the bankruptcy court, or of some court in a suit by the trustee. But, however that may be, the record in this cause, taken as a whole, fails to show that the bankrupts had in their possession at the date of the order committing them for contempt either the money or the goods referred to. If the bankrupts have sworn falsely in their pleadings or on their examination—and this proceeding is based solely on that hypothesis—the law provides for their punishment on indictment and conviction by a procedure which secures to them the right of trial by jury with all its constitutional safeguards.

On Petition for Rehearing.

PER CURIAM. No one of the judges who concurred in the decision of this case desires a rehearing. The petition for rehearing is therefore denied.