In re AVERICK.

(District Court, M. D. Pennsylvania. June 1, 1909.)

No. 1,085, in Bankruptcy.

BANKRUPTCY (§ 136*)—ORDER REQUIRING BANKRUPT TO TURN OVER PROPERTY.
Where a retail merchant, three months prior to his bankruptcy, had a stock worth $5,000, to which he afterward added $10,500 worth, which was more than his business required, and failed to account in any way for goods to the value of more than $4,000, accepting the valuation given by himself in his schedules on his remaining stock, such facts were sufficient to sustain a finding that he concealed property from his trustee, and an order requiring him to turn the same over.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In Bankruptcy. On exceptions to report of John S. Courtright, referee, sur rule on bankrupt to turn over certain goods and merchandise.

W. A. Skinner and C. A. Van Wormer, for bankrupt.

R. L. Levy, for trustee.

ARCHBALD, District Judge. The bankrupt had two stores; the main one at Susquehanna, Pa., where he resided, and the other at Sidney, N. Y., a few miles distant. He went into voluntary bankruptcy on December 6, 1907, and turned over to his trustee his stock on hand, which he valued in his schedules at $6,800. As shown by his bills and invoices, he had bought for the fall trade goods to the amount of $10,427.19, and had on hand at the beginning of the season, as found by the referee, stock in the two stores of the value of $5,000—$4,000 at Susquehanna and $1,000 at Sidney. He paid out some $3,025 to creditors on various accounts in the three months preceding his bankruptcy, and had $1,100 of other cash expenses, beside losing $300 by sales on credit. These figures show $4,202.19 worth of goods unaccounted for, which the bankrupt must either have in his possession and keep back from his trustee, or else have disposed of and put the money in his pocket.

The conclusion so reached depends, of course, on the evidence and the deductions made from it, of which there can be no just criticism, provided the figures taken are accurate. That brand-new goods of over $10,000 went into these stores within a few months immediately preceding bankruptcy is not and cannot be denied, being proved by the bills or invoices. It is said, however, that these goods began to come in in June and July, and not, according to the dates on the bills, in August and the months following, the bills being postdated; and that the reckoning, therefore, should not begin with August 1st, but be carried back of that, which would make quite a difference. But, if this was the fact, it would have been very easy to have pointed out the particular bills to which it applied, on some few of which, indeed, the postdating is indicated; and, being capable of definite proof of this kind, it should not have been left to the mere general statement of the bankrupt. Beside that, when Greenwald was at the Susquehanna store, the fore part of August, his estimate of the stock there, which is

objected to as too high, was only $5,000, showing that in no event could any great quantity of new goods have come in until afterwards. It is true that he saw some fall and winter suits, so that there may have been some new goods there. But it is not at all likely, considering the quantity that he saw, and the fact that it was still summer, that there were very many.

The value of the goods which the bankrupt had when he failed is put in the schedules, where he would be inclined to make the most of them, at $6,800. According to the appraisers they were worth only $4,800, and they were sold by the trustee the latter part of January, after taking out the $300 exemption; at $3,900. It is now claimed that at cost prices, with which comparison is to be made, they were worth $7,600. But, all things considered, the estimate of the bankrupt, when he made up his schedules, may well be taken. There was no controversy then, as there is now, and he had no purpose to serve in fixing the value, except possibly to enhance it. And we are not obliged to accept what he says about it at this time, in the face of that, simply because he swears to it.

As already stated, the value of the stock in the Susquehanna store, when Greenwald was there, according to his estimate, was about $5,000. That he was competent to speak on the subject, by reason of his experience, there can be no question, and his observation was not a casual one. He looked over the store for the purpose of seeing how much there was, in order to decide whether to give the bankrupt credit. The contention now is that the stock on hand which he saw was only worth $3,000. But it is admitted by the bankrupt that this estimate is a mere guess by him. And opposed to it we have his statement, earlier in his examination, before there was any suggestion as to what it might lead to, that he carried as a rule at the Sidney store about one-half as much as at Susquehanna, and that the average at Sidney was about $2,500. It is said, however, that Greenwald cannot fix the time when he was there, except that it was between the 1st and the 15th of August, and that, at the later date, taking the bills as they read, $1,100 of new goods had come in, which should be allowed for. But the referee has not charged the bankrupt with having $5,000 at Susquehanna on August 1st, but $4,000, or $1,000 less than the amount fixed by Greenwald, which eliminates this question.

It is finally said that the money that went into the bank, rather than what was checked out, is to be taken as representing sales, and that this amounted to $7,060.91, including $850.42 of borrowed money to be deducted. But this sum is derived by going back to June 1st, which there is no reason for doing; and neither is there in the record any evidence by which, if material, to make the correction. And, besides that, if money from sales, above what was checked out, was deposited in bank, the bankrupt is not entitled to credit for it, unless it was also turned over to his trustee, or is otherwise accounted for, being convicted, without this, of having got away with just so much more; whether of property, or money derived from it, is immaterial.

What is there, then, to relieve the bankrupt from the logic of the situation? He lost no money by speculation, bad investments, or gambling. He had no bad debts outside of the $300 already allowed him.

Neither his store nor his personal expenses were large, and all that he paid out on this account, as well as on business debts or for borrowed money, has been credited. The amount of goods which he bought was altogether beyond the needs of his business, and, having been received within three or at most four short months immediately preceding his bankruptcy, had disappeared at the end of that time with almost nothing to show for it. He could not have sold them in the ordinary course of trade, his business not being large enough to take them. And if he disposed of them at forced sales it would have been known and attracted attention. It is this that constitutes the strength of the case against him and gives an adverse cast to his so-called failure. All things considered, the only fair conclusion, with the figures so seriously against him as they are, is that he covertly made away with so much as he cannot account for, and should now in consequence be required to produce and turn it over.

There is nothing in the position that the order made does not correspond with the petition of the trustee, which is the basis of the proceedings. In both he is charged with having in his possession goods and merchandise of a specified character and value which he withholds from his trustee, which is clearly sufficient to apprise him of the charge against him.

The motion to dismiss the proceedings is refused, the exceptions are overruled, and the order of the referee is confirmed.