## In re RICHARDS.

(District Court, W. D. Arkansas, Ft. Smith Division. December 14, 1910.)

**1. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—FAILURE TO PAY OVER—ORDER —CONCLUSIVENESS—CONTEMPT PROCEEDINGS.**

Where a bankrupt ignored an order of the referee directing him to pay to his trustee $500 as withheld assets, and the order became final for want of a petition to review, the court, on an application to punish the bankrupt for contempt, would not review the referee's finding of fact which was the basis of the referee's order that the bankrupt had in his possession $500 which he had withheld and which he was ordered to pay over.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

**2. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—CONTEMPT—ABILITY TO COMPLY WITH ORDER.**

A bankrupt will not be punished for contempt for failure to turn over assets alleged to have been withheld, provided he is able to prove to the court's satisfaction that he has no ability to comply with the order.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

**3. BANKRUPTCY (§ 136*)—WITHHELD ASSETS—CONTEMPT—FAILURE TO PAY OVER.**

Evidence *held* to justify a referee's finding that at the making of an order requiring a bankrupt to turn over $500 to his trustee as withheld assets, and at the time proceedings were instituted against the bankrupt for contempt in failing to comply with such order, he had the ability to do so, and that his conduct in pleading that he had no funds "belonging to the estate" was fraudulent and contemptuous.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of bankruptcy proceedings of J. A. Richards. On motion to show cause why the bankrupt should not be committed for contempt in refusing to turn over to a trustee money alleged to have been withheld. Order allowed, and bankrupt committed.

On June 13, 1910, J. A. Richards was adjudged a bankrupt in this court. On July 6, 1910, and on subsequent dates up to and including August 17, 1910, an examination of the bankrupt was had; he being represented by counsel. This resulted in the filing by the trustee on August 17, 1910, of a

motion before the referee to compel the bankrupt to appear and show cause why the referee should not enter an order requiring him to pay over $2,500 then in his possession to the trustee, which amount it was alleged was not contained in his schedule. The order was made bearing date August 2, 1910, returnable August 16, 1910. The bankrupt appeared in response to the citation and answered, denying under oath that he had withheld any amount from the trustee. On the same day the bankrupt was examined under oath, and other testimony pro and con was taken and reduced to writing. The original testimony of the bankrupt previously taken before the referee was by consent admitted as evidence. On this hearing the bankrupt was represented by counsel, and the same, having been argued and submitted, was taken under advisement by the referee. On August 30, 1910, the referee filed a written opinion, carefully reviewing all the facts, and entered an order as follows:

"Upon this 30th day of August, 1910, comes on to be heard the matter, continued from the 17th day of August, 1910, of the petition of the trustee for an order requiring the bankrupt to turn over certain concealed assets, belonging to said estate; and the court, having heard all of the testimony and argument of counsel, doth find that the said J. A. Richards, the said bankrupt, has in possession and concealed from the trustee of said estate, goods, wares and merchandise to the value of $500, as follows:

| | | |
|---|---|---|
| To mdse and fixtures on hand Jan. 1, 1910 | $5,000 | 00 |
| " " purchased since Jan. 1, 1910 | 225 | 00 |
| " cash of J. E. Wood for the sale of his interest in the secondhand store | 230 | 00 |
| | $5,455 | 00 |

"And the bankrupt is to be credited with the following:

| | | |
|---|---|---|
| Salary, to son Walter 5 months, less amount paid by bankrupt, out of exemptions | $ 100 | 00 |
| Incidental expenses of store | 125 | 00 |
| B. & L. Ass., on storehouse for Jan. 1910 | 47 | 33 |
| " " " dwelling, 2 payments | 21 | 37 |
| Ins. premium on dwelling | 10 | 00 |
| Dealfield for labor at store | 20 | 00 |
| Expenses of trip to Texas | 100 | 00 |
| Exemptions $400.00 cash, Mdse. $100.00 | 500 | 00 |
| Clothing and other incidentals | 100 | 00 |
| Physician | 20 | 00 |
| Household expenses, 5 months | 200 | 00 |
| Drinking, etc., | 200 | 00 |
| Discount on sale of merchandise $400 to Padden, at 25 per ct. discount | 100 | 00 |
| Paid on mdse accts | 269 | 90 |
| | $2,012 | 70 |
| Inventory of stock on hand May 5, 1910 | 2,840 | 60 |
| | $4,853 | 30 |
| Balance unaccounted for | $ 601 | 30 |
| Allowed for errors and omissions | 101 | 30 |
| | $ 500 | 00 |

"It is therefore adjudged and ordered that the said J. A. Richards, the bankrupt, within 15 days from this date, pay over to M. A. Stratton, trustee of the said bankrupt estate, the sum of $500, withheld and concealed by him from the said trustee belonging to said bankrupt estate; and it is further ordered that the bankrupt have 15 days in which to file a motion for review by the district judge of these findings and order."

The bankrupt ignored the foregoing order, filed no petition for a review thereof, and the same became final.

On October 7, 1910, the trustee filed a petition with the referee, praying the referee to certify the record to this court, and the same was done on that date. The record was certified, including the written evidence taken before the referee, and was filed in this court October 10, 1910. October 8th, two days previous, the trustee filed in this court a petition briefly reciting the previous proceedings before the referee, including the order to pay over, and asked for an order citing the bankrupt to appear and show cause why he should not be punished for contempt in refusing to obey the referee's order to pay over $500 then in his possession. The order was made by the judge of this court returnable October 20, 1910. The order was not served until October 19, 1910. On October 21, 1910, the bankrupt appeared in person, and on motion of his attorney the matter was set down for hearing on the 3d of November, 1910. On November 3d the case was heard, the bankrupt being present and being examined by his counsel and also one other witness produced by him, and the testimony reduced to writing, and the case was then submitted on that testimony and the original evidence and proceedings before the referee, and taken under advisement by the court.

Kimpel & Daily, for trustee.
Pole McPhetridge, for bankrupt.

ROGERS, District Judge (after stating the facts as above). I have examined with care the entire record in this case. As the bankrupt asked no review of the referee's order, he must be held to have acquiesced in the referee's finding of fact that on August 31st, when the referee's order was made, he had in his possession $500 which he had withheld from his schedules, and which he had been ordered to pay over within 15 days.

This inquiry now before the court begins with the entering of the order by the referee, which the court must accept as final and conclusive. In the case of In re Marks (D. C.) 176 Fed. 1018, McPherson, Judge, gives a clear exposition of the law of a case like this, and what he says is as applicable to this case as to the one then under consideration. I adopt it as the law governing the practice in this case. It is as follows:

"For the purpose of enforcing it the trustee obtained a rule requiring the bankrupt to show cause why he should not be committed for contempt in failing to pay. He answered the rule, and a hearing was had before me in open court on December 29 and 30, 1909, when such testimony was presented as either party desired to offer. The question for decision is whether the bankrupt should be committed to prison for failure to comply with the order of June 24th; and upon this question the brief of the trustee's counsel concedes that: 'All the cases are practically harmonious in the declaration that, if the court is convinced that the bankrupt is unable to comply with the order, he should not be committed for contempt. Without the physical ability to comply, there can be no contempt.'

"Unquestionably that is the rule in this circuit. The Court of Appeals approved it in Trust Co. v. Wallis, 11 Am. Bankr. Rep. 360, 126 Fed. 464, 61 C. C. A. 342; and there are decisions elsewhere to the same effect. It will be observed that the present case differs from those which involved the preliminary question whether the referee or the District Court should make an order on the bankrupt to pay money or deliver goods. Here that point has been passed. It has been finally decided that in February, 1908, the bankrupt had in his possession or under his control the sum of $3,000 belonging to his estate in bankruptcy: and it only remains to inquire whether he is now able to pay. In this proceeding the court will not re-examine the question whether the order should ever have been made—either at all, or in the particular amount fixed by the referee. The trustee has there-

fore an unimpeachable right to the money specified in the order, and presumptively the bankrupt is able to pay it; but the admission must nevertheless be made that the presumption may not correspond with the fact, and that in reality the bankrupt cannot comply with the order. Unless he has the physical ability to comply, he should not be committed for contempt. In practical effect, although perhaps not in legal contemplation, this would revive the abolished penalty of imprisonment for debt. If he cannot pay, and if this inability is the result of his own criminal act, he may, of course, be punished by the criminal law, although no civil remedy may be available in the situation. Even if he has misappropriated the money, the court has not the power to imprison him in a proceeding for contempt; for this would deprive him of his constitutional right to submit the charge of misappropriation to a jury in the proper criminal court, and would deprive him also of the inseparable right to be exempt from imprisonment for such an offense until he shall have been lawfully convicted. And it is also true that he cannot be imprisoned in a proceeding for contempt, if for any other reason he cannot produce the money; for the court cannot imprison as a punishment. It can only imprison to compel obedience to its order. But with an order to pay in force against him, and with need to overcome the presumption of his ability to comply, it will no doubt happen at times that a bankrupt may fail to meet the burden of proof, and may be obliged to go to jail until he satisfied the court that he was telling the truth when he pleaded poverty. Certainly his bare denial of present ability to pay may be properly regarded with suspicion, and he may be required to satisfy the court with clearness that obedience to the order is wholly beyond his power. Such situations must be dealt with as they arise. No general rule can be laid down, and each case must stand upon its own facts. A decision upon the general subject has been recently reported from the Second Circuit. In re Stavrahn, 174 Fed. 330 [98 C. C. A. 202]."

This case is sustained by the case of In re Stavrahn, 174 Fed. 330, 98 C. C. A. 202, decided by the Court of Appeals of the Second Circuit. Aside from the questions of practice, the principles here decided have the sanction of the Circuit Court of Appeals for this, the Eighth circuit. In re Rosser, 101 Fed. 562, 41 C. C. A. 497; Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451; In re De Gottardi et al. (D. C.) 114 Fed. 328; Clay v. Waters, 178 Fed. 385, 101 C. C. A. 645.

Notwithstanding these and other like decisions, out of abundance of caution I have reviewed the action of the referee, and the testimony has driven me to the conclusion that the liberality of the referee in making allowances to the bankrupt was not justified by the testimony. He might well have found a larger sum in his possession than $500. If the referee's findings were before me on review, upon petition by both parties, I should feel called upon to restate the account, and charge the bankrupt with a larger sum unaccounted for. The rule governing the court in such cases is correctly stated in the case of In re Cole, 16 Am. Bankr. Rep. 302, 144 Fed. 392, 75 C. C. A. 330, by the United States Court of Appeals for the First Circuit, as follows:

"Unless the affirmance of an order directing the bankrupt to turn over certain money to her trustee is so wholly unjustified on the proofs as would require this court on writ of error to set aside a verdict for want of evidence to sustain it, the determination of the court low is not reviewable here on petition to revise."

The real question left for the court to determine now is whether the bankrupt has it in his power to comply with the order of the referee. It was held in the case of In re De Gottardi et al. (D. C.) 114 Fed. 329:

"Where a bankrupt admits having had money or property a short time before his bankruptcy, which is not shown by his schedules, it is incumbent upon him to clearly account for the same to the satisfaction of the court: otherwise, he must be held to still have it in his possession, and to be able to turn it over to his trustee."

The principle there stated is sound, absolutely indispensable to the practical enforcement of the bankrupt law, and it is the law of this circuit. In re Schulman (D. C.) 167 Fed. 238; In re Deuell (D. C.) 100 Fed. 633; In re Alexander R. Meier, 182 Fed. 799, by the Eighth Circuit Court of Appeals, and cases there cited. In the last case Reed, District Judge, speaking for an undivided court, said:

"It appears without dispute that on June 9, 1908, about a week before the filing of the petition in bankruptcy, the petitioner as treasurer of the bankrupt corporation received from the National Bank of Commerce, St. Louis, $12,500 in money, the property of said corporation; and on June 12th, $8,750 more as the proceeds of the sale of the remainder of its assets. The night before the petition in bankruptcy was filed, the petitioner left St. Louis, and did not return until the fall of the year following. Upon the hearing before the referee he not only failed to account for the money so received by him, but refused to answer all questions asked him relative to its disposition upon the ground, as stated by him, 'that his answers might tend to incriminate him.' His counsel asked of him but one question, which is: 'Have you any property in your possession of the Meier China & Glass Company?' He answered, 'No, sir.' This is the only showing he has seen fit to make of the disposition of over $20,000 in money of the bankrupt corporation so received by him as its treasurer within a few days prior to its bankruptcy. That the petitioner received the money of the corporation as stated is not disputed, and the only thing said in support of the petition to revise is that there is no presumption that the petitioner had this money or any part of it in his possession when the order requiring him to turn over $12,500 thereof to the trustee was made. But the settled rule is that, when property of a bankrupt estate is traced to the possession of one who receives it upon the eve of the bankruptcy of its owner, it is presumed that it remains in his possession or under his control until he satisfactorily accounts to the court of bankruptcy for its disposition or disappearance; that the burden is upon him to satisfactorily so account for it; and that he cannot escape an order for its surrender by simply denying under oath that he has it, or that it is the property of the bankrupt estate. Mueller v. Nugent, 184 U. S. 1 [22 Sup. Ct. 269, 46 L. Ed. 405]; Boyd v. Glucklich, 116 Fed. 135–143 [53 C. C. A. 451]; Schweer v. Brown, 130 Fed. 328 [64 C. C. A. 574]; In re Salkey, Fed. Cas. Nos. 12,253, 12,254.

"In this case the petitioner does not even deny that he has the money in his possession or under his control, but only denies that it is the property of the bankrupt estate. This is wholly insufficient to escape an order for its surrender. Even if he had denied having the money in his possession or under his control, the referee was not required to accept such denial as conclusive; and if otherwise clearly satisfied from the evidence that he did have it in his possession or under his control it was his duty to order him to surrender it. To most of the questions asked the petitioner upon the hearing before the referee relative to his dealings with the bankrupt estate which he did answer, he returned only the stereotyped answer, 'I don't remember.' Such answers do not conceal the falsehood they are intended to hide.

"The least that can be said of the conduct of this petitioner with reference to the money so received by him is that it was a bold and deliberate attempt to defraud his creditors of, and appropriate to his own use, at least $12,500 of the property of this bankrupt estate; and, while he cannot be punished in this proceeding for his reprehensible and dishonest conduct, he can and should be required to comply with the order of the court made in due course of the bankruptcy proceedings by confinement, if necessary, as for contempt until such order is complied with."

The only question having any relevancy to this contempt proceeding which the bankrupt's counsel asked him on the trial was:

"I will ask if you concealed or refused to account for any article or asset of property in your possession. No, sir."

. So the language of the opinion just quoted is directly in point. In this case the petitioner does not even deny that he has the money in his possession or under his control, but only denies that he concealed or refused to account for any article or asset of property in his possession. This answer is in keeping with his whole course of conduct, and manifestly untrue. A witness whose testimony is shown to be as false, deceitful, disingenuous, and dishonest as this bankrupt's testimony has been shown to be in many instances, is not to be credited at all, and may be absolutely disregarded, or ought to be.

In the case at bar there is clearly shown to be a deficit in the bankrupt stock of merchandise and other assets occurring between the 1st of January, 1910, and the 13th of June, 1910 (the date proceedings in bankruptcy were begun) of not less than $1,000, after allowing him for more than just credits, credits which I do not believe the evidence fairly warrants. $500 of this sum was for the first time disclosed on the trial of this proceeding for contempt as being in his possession in the latter part of May just before the bankruptcy proceedings were begun. It was not even mentioned by him or the witness Wood on the trial before the referee, though both of them were examined before the referee. All efforts to draw from the bankrupt any account of what went with his assets were met with the answer, "I don't know, I can't remember," and the like. As said in Re Schulman et al. (D. C.) 167 Fed. 238:

"On very numerous occasions his reply was the stock answer of the prevaricator, 'I don't remember,' and the whole examination from the beginning to the end is a perfectly transparent case of duplicity, intentional evasion, and refusal to make any explanation of the facts connected with his bankruptcy under the pretense of ignorance and stupidity. The whole attitude of the bankrupt in the entire proceeding is that of contempt of this court and of its authority, and a deliberate determination to conceal from his creditors all the material facts within his knowledge relating to the affairs of his firm."

This record shows conclusively and beyond all reasonable doubt that when the bankrupt found he could not meet his obligations, and was sued or about to be sued, he made up his mind to convert all of his assets he could into money and first refuse to pay any creditors, and then after the bankruptcy to defy the bankrupt court by the false statement that he did not know how to account for the deficit in his assets. Indeed, he says that he sold a wholesale bill to one man for about $300, intending at the time to pay it to one of his creditors, but upon getting it he changed his mind and decided not to pay his creditor, and pocketed the money. He says he sold his interest in the secondhand store about January 1, 1910, and yet swears that he cannot tell what he got for it. The man who bought it knew and testified to the facts in detail. The conclusion cannot be escaped that the bankrupt knew it also; that he did not is incredible. He discounted a part of the commercial paper taken in part for that stock only a short time before,

and to a solvent merchant, and pocketed the money; he refurnished his house out of his stock and did not schedule the furniture so taken, saying he had given it to his wife; he made no pretense she had paid for it, or that it was other than a pure gift; he closed his account at the bank early in 1910, and subsequently made no deposits; he gave in part what he took in to his wife and kept the other, keeping no account of the amount of either; he kept no account of sales or collections; he concealed the cash book he had kept before he began his scheme to swindle his creditors, and he sold goods at 25 per cent. below wholesale price, and kept no account of them, and pocketed the money; he continued to buy goods during the conduct related, and to sell and not pay those he purchased of; he paid no creditors after the scheme began.

Is a court of conscience to be blind to the shamelessness and dishonesty of a man who presents himself in this attitude and makes no attempt to excuse it or explain it except by saying, "I don't know," or, "I can't remember"? In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 105, the Supreme Court of the United States said:

"It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403 [25 L. Ed. 866]), and on adjudication title to the bankrupt's property became vested in the trustee (sections 70, 21e), with actual or constructive possession, and placed in the custody of the bankruptcy court."

The $500 the bankrupt had in his possession in May was as much vested in the trustee as the goods in his store. He has not yet denied he had it then. Indeed, he introduces the witness Wood who swore he had it, and he made no effort to explain what he did with it. He did not even return to the witness stand to say where he got it, or what disposition he had made of it. He had previously given nearly that much to his wife in money, and subsequently took $400 as exemptions. There is no reasonable doubt of the bankrupt's guilt of all he is charged with, and more.

The order is that he will be committed to the United States jail at Ft. Smith for four months; the court reserving the case for such future order as may seem proper in the event he complies with the order of the referee to pay over to the trustee the $500.