### In re REYNOLDS.

(District Court, M. D. Alabama, N. D. October 18, 1911.)

BANKRUPTCY (§ 136*)—WITHHELD ASSETS—CONTEMPT.

    A court of bankruptcy has no jurisdiction to punish a bankrupt for contempt in failing to obey an order directing him to turn over to the trustee assets alleged to have been withheld, unless the evidence shows that the bankrupt has present possession of the property and ability to comply with the order.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In Bankruptcy. In the matter of bankruptcy proceedings of C. W. Reynolds. On petition to review a referee's order requiring a bankrupt to turn over to the trustee goods and merchandise, or their alternative value, and at the same time to show cause why he should not be punished for refusal to obey the order. Reversed.

Tipton Mullins and Jones, Foster & Field, for bankrupt.

London & Fitts, for trustee and creditors.

JONES, District Judge. This cause comes on to be heard on the bankrupt's petition to review the findings and order of the referee, made on the 25th of January, 1911, and his certificate of the refusal of the bankrupt to obey the order. After several hearings of the bankrupt, and consideration of his answers to the rule to show cause why the order should not be made, the referee found that the bankrupt "has now in his possession or under his control certain goods, wares, merchandise, or money, the proceeds thereof, amounting to the sum of $19,772.96, or that he has in his possession or under his control goods, wares, and merchandise in part, and money in part, of the aggregate value of $19,772.96." Whereupon it was ordered by the referee that the bankrupt, on or before the 9th of February, 1911, turn over and deliver to his trustee in bankruptcy the said sum of money in goods, wares, and merchandise, or in money, or, upon failing to do so, show cause why the fact of his delinquency and refusal to obey the order should not be certified to the District Court, for such punishment or disposition as to the court may seem meet and proper.

Under the certificate of the referee and the petition for review, all the papers and the evidence in the case are before the court. The

books relative to the bankrupt's business were examined and audited by expert accountants, and the bankrupt himself was twice examined at length. On his examination he was asked: "Your schedules show, and your testimony thus far shows, that since the 1st day of January, 1910, you purchased some $22,000 worth of new goods, and that on the 1st day of January you had on hand $5,000 or $6,000 worth of goods, making in all some $27,000 worth of goods?" He answered: "Yes, sir." He was then asked: "Now, what became of the proceeds of the $18,000 worth of goods you have not accounted for?" He failed to give any satisfactory account whatever of the disposition made of his assets, after allowing him credit for every legitimate item shown in fact to exist. If the alleged pool and gambling losses, and the expenses in the contest for the Clanton postoffice, and the incidental expenses connected with it, amounting to about $2,400, be allowed him, still the bankrupt's shortage in his assets would be over $17,000, and he has given no satisfactory or creditable explanation as to what has become of this balance.

I cannot find, however, after a careful examination of the evidence, that it justified the finding of the referee that the bankrupt has *now* in his possession, or at the time the order was made, either the goods or the money proceeds, amounting to $19,772.96, or any other sum. While the evidence leaves no shadow of a doubt that the bankrupt had goods of that value for which he has not accounted, or has converted into money, and that at one time he had them under his control, I do not think the proof sustains the referee in the finding that at the time of the order, or at the time of his examination, the bankrupt still had in his possession or under his control either the goods or the money. After a very diligent investigation of his affairs, no proof is offered showing the disposition of any specific goods, or tracing to him the possession of any considerable sum of money, or other evidence offered of such conduct as indicates that he now has any of the goods, or money derived from their conversion, in his possession or under his control.

Under the decision in the case of Samel v. Dodd, 142 Fed. 71, 73 C. C. A. 254, rendered by our Circuit Court of Appeals, it is not within the power of the court, whatever view it may take of the bankrupt's version of affairs, to render a judgment for a surrender of goods or their alternative value, and attach the bankrupt for contempt for failing to turn over the goods or the money, although the proof may convince the court beyond all reasonable doubt that at one time the bankrupt had the goods or the money. The order must not be made, unless upon clear and convincing proof that the bankrupt has the goods or the property in his possession at the time of the making of the order and has the ability to comply with it. Under the influence of that decision the court is compelled to reverse the order, and must decline to commit the bankrupt for contempt in failing to obey the order. The following order will be entered:

Now, on this the 18th day of October, 1911, this cause came on for hearing and determination upon the petition for review filed herein by the bankrupt of the order made by the referee, and upon the evi-

dence taken before the referee, upon which said order was made, and the record of the case, and the court, being fully advised, for the reasons stated in the opinion this day rendered, doth order and decree that the order made by the referee in this cause on the 25th of January, 1911, requiring the bankrupt to pay over to his trustee in bankruptcy the sum of $19,772.96 in goods, wares, and merchandise, or in money, be reversed and held for naught, and that the rule upon the bankrupt to show cause why he should not be punished for a failure to comply with the order be discharged.