IN RE J. H. SMALL SHOE CO.

---

## In re J. H. SMALL SHOE CO.

(District Court, D. Connecticut. May 12, 1926.)

### No. 1708.

1. **Bankruptcy** ⟺288(1)—**Commitment for contempt for failure to comply with order to turn over assets should be made only when respondent has present ability to comply.**

The power to commit for contempt for failure to comply with order to turn over assets to trustee is to be exercised with caution, and only when the court is satisfied that respondent has the present ability to comply.

2. **Contempt** ⟺39.

A motion to punish for contempt is addressed to the discretion of the court.

3. **Bankruptcy** ⟺303(3)—**Presumption of continuance of status held not sufficient to warrant commitment for contempt of one who testifies he is unable to comply with prior order to turn over money belonging to bankrupt estate.**

The presumption that a status once established continues must have its limitations, and a finding that a person has money belonging to a bankrupt estate, which he is ordered to turn over, will not constrain a court, a year and a half later, to commit him for contempt for failure to comply with the order, against his uncontradicted testimony that he is unable to comply.

4. **Bankruptcy** ⟺303(1).

On a motion to commit for contempt for failure to comply with turn-over order, the burden of proving respondent's present ability rests on the trustee.

In Bankruptcy. In the matter of the J. H. Small Shoe Company, bankrupt. On motion to punish J. H. Small for contempt. Denied.

See, also, 1 F.(2d) 416; 4 F.(2d) 618.

Lesser Bros. and Samuel L. Miller, all of New York City, for trustee.

Benjamin Slade, of New Haven, Conn., for respondent.

THOMAS, District Judge. This is a motion to punish Joseph H. Small for contempt of court for failure to comply with an order of court directing him to turn over the sum of $10,000 to his trustee in bankruptcy. The J. H. Small Shoe Company was adjudicated an involuntary bankrupt in October, 1922, in the Southern district of New York. In February, 1924, an order was entered by Judge A. N. Hand, directing Joseph H. Small to turn over $10,000 to the trustee, assets of the bankrupt found to be in his possession. Under the ancillary jurisdiction of this court Judge Howe entered an order on August 29, 1924, making the order of the District Court for the Southern District of New York the order of this court. Small thereupon filed in the Circuit Court of Appeals a petition to revise this order, and in February, 1925, the order of the court in this jurisdiction was affirmed. Thereupon the mandate of the Circuit Court of Appeals was made the order of this court in March, 1925.

Small has not turned over any money to the estate, so the trustee now brings this proceeding to punish him for contempt. The petition recites the record and alleges that Small has intentionally disregarded the order of this court. Small filed an answer to the allegations contained in the petition, in which he concedes that he has not paid the money, and alleges that he does not willfully and contumaciously refuse or neglect to obey the order; that he does not obey the order because of his inability to comply with it for want of financial means and his inability to acquire such means, although he offered an adjustment of the trustee's claim, based upon a proposed borrowing, but this was refused by the trustee. At the hearing on the motion Small took the witness stand and swore that he did not possess the money, had no assets or estate at the time of the service of the order, and is unable to comply with the terms of the order. He further testified that he earns only $50 per week, and owns one share of stock, which has no market value, in a corporation with which he is connected. No evidence was offered by the trustee, nor was Small cross-examined by counsel for the trustee, who apparently was content to rely upon the original order.

There are probably no questions arising in the administration of the bankruptcy law which are more troublesome than those involved in turn-over proceedings and their concomitant contempt proceedings. Their difficulty does not reside in any elusive legal principle, which requires delimitation. It is usually a perplexing question of fact, which the court must resolve, and I cannot conceive of any class of civil cases where arbitrary treatment is more inappropriate.

The legal principles applicable to this type of contempt proceedings seem to be fairly well settled. An order to turn over assets imports a finding that, at the commencement of the bankruptcy proceedings, the bankrupt had in his possession the assets directed to be turned over. On the other hand, an order adjudicating a bankrupt in contempt of court for failure to turn over such assets is a separate proceeding, and must be predicated on a finding that the bankrupt is at present in possession of such assets.

These principles are simple enough, and their application would present no vexing problem, if the situation were not complicated and clouded by the introduction of a maxim of the law of evidence. I am, of course, alluding to the presumption of the continuance of the status, once that status has been established. It is upon that presumption trustees invariably rest in such proceedings, and that is apparently true in the case at bar. Nor can I find any authoritative pronouncement determining how far and when such a presumption may be said to be rebutted, or how long the presumption continues, so as to require the trustee to reassume the burden of proof.

[1] It is generally held that the power to commit for contempt for failure to comply with an order to turn over assets is to be exercised with caution, and only when the court is satisfied that the respondent has the present ability to comply. Samel v. Dodd, 142 F. 68, 73 C. C. A. 254; Boyd v. Glucklich, 116 F. 131, 139, 53 C. C. A. 451; In re Mize (D. C.) 172 F. 945; In re Marks (D. C.) 176 F. 1018.

[2] It is also still the rule that a motion to punish for contempt is addressed to the discretion of the court. Maxims of judicial policy in the evaluation of evidence are intended for the guidance of the court, and are not designed to constrain the judicial conscience. On such applications as the one here presented the court sits as the trier of the facts as well as of the rules of law, as this is a separate proceeding and independent of what has preceded. Before the court will proceed to punish by imprisonment, it must be convinced that the accused has committed the offense charged against him. It may have the right to find the facts on the unaided strength of a presumption, but it is not bound to do so.

The turn-over order which is the basis of

this proceeding was entered 14 months prior to the hearing on this motion. The bankruptcy proceedings were commenced over 3 years ago. The order in this district, which was entered by Judge Howe on August 20, 1924, not only directed the restoration of this money, but embodied a finding that Small had, at the time of the making of the order, the $10,000 directed to be turned over. It was unnecessary to incorporate such a finding in the order, and the question may be fairly put whether such a finding was therefore res adjudicata. However, the order was affirmed by the Circuit Court of Appeals in toto, and I therefore give to that finding the full force of an adjudication, to which, of course, it is entitled.

[3] The maxim that a status, once proven to have existed at a particular point in time, is presumed to continue, must nevertheless have its limitations. No one will contend, because John Marshall was alive in 1800, that therefore a presumption exists that he is alive to-day. Such an extreme example points out the necessity for some limitation on the time such a status is presumed to exist. When we are dealing with so volatile a possession as money, the vitality of the presumption of continuance is quickly dissipated. If Small stood mute, the evidentiary force of this presumption might still be adequate to carry conviction. But Small does not stand mute. He testifies. On the day of the hearing on this motion he swears he has nothing. In the face of this testimony, uncontradicted and with no cross-examination, this court is asked to send him to jail on the strength of a presumption only. If I had no doubt in the matter, I would do so, as I am aware of the possibilities open to dishonest men under similar circumstances. But I have doubts, grave doubts, which are created by the testimony, coupled with the fact that no testimony is offered by the trustee to overcome them.

I am not unmindful of the numerous reported instances in which this presumption was sufficient to convince the courts. I have before me the language of that learned jurist, Judge Hough, in Re Friedman (D. C.) 153 F. 939, who, on page 941, said:

"The opposition to the punishment of the persons proceeded against for contempt is really based upon a proposition perfectly sound in itself, but I think inapplicable to the matter in hand. A person who has no money should not be punished for contempt in failing to turn over money. But the very point of this proceeding is that it is the opinion of

the court that the persons proceeded against have the money and do not tell the truth when they assert their inability to pay. *Instances are numerous where this same objection was made in limine, and the court became satisfied in time, either that the parties incarcerated had spent the money, or intrusted it to still other persons who had made away with it, and thereupon the prisoners were released.*"

It seems to me that in such instances there had been, not only a miscarriage of justice, but a certain ineptitude in the administration of the law. For it is obvious that the bankrupts in such cases had endured imprisonment, not for contumacy, the proffered ground upon which they had been imprisoned, but because the courts, relying upon the cogency of a presumption, had committed error as to the facts. The release from jail in such cases had not been ordered because the bankrupts could not endure further imprisonment, but because, as Judge Hough said, "the court became satisfied in time" that denial of ability to pay, originally made in the contempt proceedings, was true. So there is a flavor about this conception of the utility of incarceration as a device for ascertaining the facts that smacks of the period antedating the Bill of Rights. Nor am I subtle enough to be able to distinguish this procedure from that other time-honored, but somewhat obsolete, practice of imprisonment for debt.

[4] The burden of establishing the present possession of the money directed to be turned over rested on the trustee. That burden was not met. The trustee, adopting the language of some precedents, argues that there is a fatal defect in making denial of present possession; that the acceptance of such denials would too easily defeat the ends of justice. But the argument is subject to the same criticism that it levels. There is no advantage more fatal than unchecked indulgence in presumptions. It is to guard against the human weakness that we have erected the formidable structure of adjective law. Our rules of evidence are almost entirely rules of exclusion. The genius of our law requires that the guilty one shall escape rather than an innocent man shall suffer imprisonment.

With no proof—not even an allegation—before me that Small has the money directed to be turned over, or any part of it, I am constrained, for the reasons given, to deny the motion to adjudge him in contempt.

Decree accordingly.