### In re MAGEN.

(District Court, E. D. New York. July 31, 1926.)

1. **Bankruptcy ⊂⟩136(12)—Before disobedience of turn-over order will be punished by imprisonment, court must be satisfied bankrupt is able to comply therewith.**

Before failure to obey turn-over order will be punished by imprisonment as civil contempt, court must be completely satisfied that bankrupt either has the property or the ability to comply with the order, and is therefore willfully disobeying it.

2. **Contempt ⊂⟩2—"Criminal contempt" is offense against people proceeding through courts; "civil contempt" relates to individuals and their respective rights.**

"Criminal contempt" is an offense against the people proceeding in an orderly way through the courts, while "civil contempt" relates to individuals and their respective rights.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Civil Contempt; Criminal Contempt.]

3. **Bankruptcy ⊂⟩136(12)—Circumstantial evidence, to alone justify imprisonment for contempt for disobeying turn-over order, must completely satisfy court of bankrupt's present willful disobedience.**

Though present possession by bankrupt and disobedience of turn-over order may be shown by circumstantial evidence alone, court must be completely satisfied of his present willful disobedience to the order, which implies present ability to comply therewith, to order his imprisonment for refusal to obey order.

4. **Bankruptcy ⊂⟩136(12)—Preponderance of evidence sufficient to sustain turn-over order may be insufficient to warrant imprisonment for contempt.**

A turn-over order may rest securely on a preponderance of evidence, which evidence may be entirely insufficient to warrant imprisonment in a civil contempt.

5. **Bankruptcy ⊂⟩136(10)—Turn-over order is prima facie proof of bankrupt's possession, rebuttable by testimony, and disobedience alone does not justify imprisonment.**

Turn-over order is, in contempt proceedings for disobedience thereof, prima facie proof of possession by bankrupt, which may be rebutted by showing financial status, not by mere denials, but by testimony as to his present financial condition, and, when this presumption is met, trustee must show bankrupt's possession or ability to comply, and mere disobedience of turn-over order is alone insufficient basis for imprisonment for contempt.

In Bankruptcy. In the matter of the bankruptcy of Herbert Magen. On trustee's motion for the confirmation of a special commissioner's report, which recommends that bankrupt be imprisoned until he complies with a turn-over order. Motion denied, and previous order punishing bankrupt for contempt vacated.

See, also, 14 F.(2d) 469.

Shaine & Weinrib, of New York City, for the motion.

Abraham Goodman and Olive Stott Gabriel, both of New York City, opposed.

INCH, District Judge. The trustee moves for the confirmation of a special commissioner's report which recommends that Herbert Magen be imprisoned until he complies with an order of this court entered on March 9, 1925.

There has been a great deal of litigation over this matter.

The trustee of the bankrupt estate is to be commended for his zeal in protecting the creditors against those that would conceal assets rightfully belonging to the estate.

There is, however, always a disappointment on the part of the creditors, if, after a bankruptcy, steps taken by the trustee to increase the estate meet with failure.

It must not be forgotten that both creditors and debtors are subject to law, and that the province of this court is to properly enforce the rights of the respective parties according to law, and not according to the de-

sire or partisanship or other motive of either party. In fact, if creditors would be more careful in giving credit before causing the debts to arise, there would be much less money spent in litigation after a failure occurs.

In this case the bankrupt failed for a considerable sum, and by means of expert accountants a situation was shown by which it was adjudged that some $32,000 in merchandise was missing, and that the respondent Magen had concealed such merchandise, and he was directed to turn over to the trustee such merchandise or its value.

This matter came on before Judge Garvin, at that time district judge, and he affirmed the turn-over order with merely the brief statement: "The record reveals that a bold and outrageous fraud has been perpetrated."

It will be seen at once that this brief conclusion by the district judge may be absolutely correct as to what had happened, and yet be of no avail or aid to me in determining whether or not the respondent now has possession of the property or ability to comply with the order, or, in fact, that he had such ability at that time.

The said turn-over order was objected to by respondent, and a petition to revise it was filed in the Circuit Court of Appeals. This petition was denied (In re Magen [C. C. A.] 10 F.[2d] 91), that court stating, among other things, in the very careful opinion of Judge Rogers: "As this case is here on petition to revise the court's duty is confined to inquiring whether any error of law was committed in the court below in affirming the turn-over order. If there was no such evidence upon which the order could be based, this court's duty is plain and the order must be reversed. But on petition to revise the court is limited to matters of law. The facts are for the district court. This court will not look further into the facts as found than to ascertain whether they are sustained by any substantial evidence." Page 96.

Therefore, bearing in mind that there was some evidence justifying a turn-over order, and particularly the brief statement of the said district judge, the appellate court affirmed. That decision would appear to be binding only as to the question presented, to wit, whether or not there was some evidence justifying the order.

It has been likewise held that, in almost a similar situation as is now presented, this does not mean that the appellate court thereby found that the evidence justified the finding of present possession and ability to comply which would require imprisonment of respondent as a coercive measure. Johnson v. Goldstein (C. C. A.) 11 F.(2d) 702. Accordingly, such question was left open in order to ascertain that important fact. This court therefore sent the matter to the special commissioner, with instructions to report on the present ability of respondent to comply.

The report of this special commissioner in no way finds such present ability. On the contrary, the found ability, if any, is based on a false premise, to wit, if respondent had the property when the turn-over order was made, he must, as a matter of law, still have it, for the reason that he has not shown what he did with the property. This entirely overlooks the distinction between procedure and truth; the latter being one of fact.

The commissioner, at page 4 of his report, states: "It may be true that Herbert Magen has no money, and has had none since January, 1925, and it may be true that he has borrowed various sums from friends and relatives during that period. It also may be true that such friends and relatives have no knowledge of any merchandise held or concealed by the respondent. Assuming all these facts to be true there is no direct issue with the turn-over order." And finally, the best that the special commissioner could find is stated, on page 10, at the end of his report, as follows: "I *believe* the respondent has the possession or control of the property in question."

The word "believe" might be overlooked were it not for the fact that it plainly is but a "conclusion" rather than a "finding" of fact, and is the result of an "argument" ably presented by the special commissioner.

[1] It is my view of the law that imprisonment for failure to obey a turn-over order, to wit, a civil contempt, can result only from the court being completely satisfied that the respondent either then has the property or the ability to comply with the order, and is therefore willfully disobeying it.

It seems to me there is no lack of harmony among the very many decisions on this point, and the distinction between imprisonment for debt and imprisonment for disobeying an order is very vital and in accordance with the fundamental principles of this government.

There is often danger that a creditor or trustee may overlook this distinction, in his zeal to collect, and this danger is not lessened by the fact that quite often, to avoid unjust, and sometimes illegal, imprisonment, a debtor, by solicitation of his friends and relatives, will get together some money, and thus avoid the disgrace and burden of going to jail. To

accomplish such a result is not the purpose of a court of justice, however useful the threat of jail may sometimes be found.

The founders of this Republic stated, in their proper order, what they considered the three most important material rights of an individual: First, life; second, liberty; and, third, pursuit of happiness. The majority of citizens have adopted this view, and consequently next to life stands the right to liberty. Individuals from time to time place a different value on these rights.

Consequently, construing "happiness" as the ability to possess things, such individuals place this right ahead of the other two, or at least ahead of liberty. Such persons compose the inhabitants of our jails, and it is nothing more than society taking their own appraisal of these "rights."

It likewise follows that, where a respondent prefers possession of property, not rightfully his, to obeying an order of this court to return it, he subordinates his right to liberty. Thus, in other words, he makes his "choice," and the court accepts it. But, where there is no "choice," for the good reason that the court is satisfied that he has neither the property nor its value, then the court will not take away his liberty in civil contempt proceedings.

[2] There is a distinction between civil and criminal contempt which is not before me. Criminal contempt is an offense against the people proceeding in an orderly way through their courts. Civil contempt relates to individuals and their respective rights.

[3] Finally, I do not mean to infer that "present possession" cannot be shown by circumstantial evidence alone, yet, as in all cases of circumstantial evidence, the requirement is that it must point to but one result, to wit, the present willful disobedience to the order, which implies present ability to comply.

Where a person's liberty is involved, and the proof is only circumstantial, such liberty should not be taken away by a preponderance of evidence, and, while it may not be necessary to use the term "beyond a reasonable doubt," it does mean that the court must be completely satisfied of respondent's guilt.

[4] It is this burden of proof as to turn-over orders and contempt orders that seems to cause a good deal of the confusion. A turn-over order may rest securely on a preponderance of evidence, but that same evidence may be entirely insufficient to warrant imprisonment in a civil contempt.

The special commissioner's report sets forth very carefully various decisions, and same need not be further mentioned, except that the commissioner states: "If we apply the theory of Judge Thomas in the Small Shoe Company matter the trustee herein is not entitled to a contempt order." (D. C.) 13 F.(2d) 143, 7 Am. Bankr. Rep. (N. S.) 811. The turn-over order in that case was affirmed ([C. C. A.] 5 F.[2d] 956), and this later case presents a somewhat similar situation to the case now before me.

[5] Aside however, from any question of burden of proof, the point is that this court, it seems to me, must be completely satisfied that the present disobedience is willful, and, while I am distrustful of cases that are built up purely by circumstantial evidence, particularly by expert accountants, when dealing with the necessity of finding facts, and possibly therefore might have come to a different conclusion from that of my former associate, yet I may assume that his order created a prima facie case of possession on the part of the respondent. This was capable, however, of being rebutted by respondent showing his present financial status, not by mere denials, but, in the only way possible, by testimony as to his now financial condition. When this presumption is met, the necessity remains for the trustee to show, by proof, that respondent has in fact possession or ability to comply. There has been no attempt to do this.

On the contrary, the trustee relies, and so does the learned special commissioner, on a "presumption" or "prima facie" case, and the latter practically states that, even if this respondent now "has no money and no property," and "no one knows what has become of the property," yet he should be imprisoned for failure to turn over something he has not got because this court some time previous, by a preponderance of evidence only, found he then possessed it. Because the said turn-over order was properly granted does not mean that a contempt order must be granted.

I do not agree with the above conclusion, and I am far from satisfied that there is sufficient proof before me to now imprison Herbert Magen.

Accordingly, I cannot confirm this report, and I vacate the previous order punishing Herbert Magen for contempt, and decline to imprison him.